[File No. 6868.]

HARRY DELALOYE, Respondent, v. ED. KAISERSHOT and Mrs. Ed. Kaisershot, Appellants.

(10 NW(2d) 593)

638

Opinion filed July 30, 1943.

*J. W. Sturgeon and H. E. Haney,* for appellants.

*Simpson, Mackoff & Kellogg,* for respondent.

BURR, J. Defendants appeal from an adverse judgment and from the order denying their motion for a new trial. A collision of a Hudson coach towing a Plymouth coach and driven by the plaintiff with a Chevrolet sedan driven by the defendant, Mrs. Kaisershot, took place on public highway #10. The plaintiff alleges he was driving westward on highway #10 and Mrs. K. northward on highway #85; that the cars he was driving were entitled to the right of way; "nevertheless the said defendant, Mrs. Ed. Kaisershot, then and there failed to yield the right of way to the plaintiff; and failed to stop . . . where the said main street . . . Belfield intersected with the . . . highway #10, and on the contrary she operated the said automobile in a careless and negligent manner by driving in front of the plaintiff's automobile, that she saw or with the exercise of reasonable diligence and care and by keeping a lookout could have seen the plaintiff's automobile approaching on her right, and to whom she was to yield the right of way, thereby causing the plantiff's car to collide with the car then driven by the said Mrs. Ed. Kaisershot, and causing the two automobiles, viz, the Hudson coach and the Plymouth coach, of the plaintiff to be wrecked."

The answer denies negligence on the part of the defendants and alleges the accident was caused by the excessive rate of speed at which the plaintiff was driving, "and because of his total disregard of the

rules of the road, and of his carelessness and negligence, he himself, and not the defendants, was wholly at fault and to blame for said collision."

The jury found for the plaintiff. Judgment was entered accordingly, a motion for new trial was made and denied, and defendants appeal.

On the motion for a new trial appellants specified: five alleged errors of the court in the instructions given to the jury; the failure of the court to give a requested instruction; and that the evidence is insufficient to justify the verdict. These errors are the basis of the appeal with the additional allegation that the court erred in denying the motion for a new trial.

The undisputed testimony shows Mrs. K. was driving a car belonging to her husband, a family car which he permitted her to operate. On September 24, 1941, she was traveling north on the main street of Belfield, known also as highway #85, to a point where this highway intersects, but does not cross, #10. Under the rules of the road, Mrs. K. was required to stop her car before entering highway #10 and she did. She turned westward on that highway, and after traveling a short distance, turned to the right, to a service station situated on the north side of #10.

The plaintiff was driving westward on #10 in the Hudson coach. His wife was with him in the Hudson. No one was in the Plymouth. From the junction with Main street, #10 has a gradual ascent to the east, the crest being about a thousand feet from the intersection with #85, and high enough so that a car coming from the east would not be visible to one at the intersection until it reached the crest of the hill. Plaintiff said that as he came over the crest, he was going "20 to 25" miles per hour. He saw this car driven by the defendant come to the intersection and stop. He does not give an estimate as to the length of the stop, but it was momentarily we gather from the testimony. He testified, as follows, after stating he sounded his horn:

A. The car stopped and we continued.

Q. How fast were you going at that time?

A. I slowed down considerably at that time, possibly 20 or 25, applying the brakes gently. When I was possibly 200 feet from the intersection the car started out again on the highway. I sounded the

horn at that time a very long blast. The car turned in our direction, that is west.

Q. Did it go north at all or did it start west?

A. No, just entered the highway, possibly to the middle or to the right of the middle. I then continued, figuring the car was going our direction, and went on. It went west possibly 100 feet. About the time my left front fender was even with the other car's right rear fender the car turned sharply to the right in front of me.

Q. In front of you? A. Yes.

Q. Was there any signal or warning given to you that she was going to turn to the right?

A. No, I had no suspicion of that.

Q. Was this other car way over to the right when it was going west or in the middle or where was it?

A. The road at that point was possibly 25 feet, ample room for three cars.

Q. Where was that car when it was going in front of you at the time it turned north making a sharp turn?

A. It was right to the center. I turned as far to my right as I could, as there was a gas station there.

Q. At the time of the accident you mean?

A. No.

Q. Or before?

A. Before the accident when the car turned in front. I turned over as much as I could without turning into the gas station.

Q. You say this car was past the center of the road?

A. Yes.

Q. Was it over to the north shoulder, would you say?

A. No, close to the center of the road.

Q. Going west? A. Yes.

Q. For a distance of about how long did it travel west before it turned north?

A. Possibly 100 feet.

Q. Then what happened?

A. Then it turned sharply to the right directly in front of me.

Q. Was there any way for you to avoid that accident at that time?

A. There was nothing that I could have seen. I could not. I applied the brakes all I could.

Q. What happened?

A. The front of my car collided with the side of the other car.

Q. Did you turn your car at that time either to the right or left immediately before the accident you tried to avoid?

A. I wouldn't say. Everything happened so fast when it turned in front of me. I didn't have 5 feet, except to apply the brakes, which were on completely by that time.

Q. Then you ran into their car?

A. Yes, broadside.

Q. You were watching the road?

A. Yes.

Q. You kept a lookout?

A. Very much so.

Q. You had your car very fully under control?

A. Yes.

Q. Did you have any reason to anticipate that this car was going to turn to the right in front of you or anything to indicate that to you?

A. No, I didn't.

Q. It came to you as a complete surprise, did it, when a car entered the intersection?

A. After I had seen the car turn in our direction to the west I figured the car was going west and I was slowing to travel behind it.

Q. You were slowing down to travel behind it?

A. Yes.

Q. Were both your cars damaged in this collision that you had?

A. The Hudson hit right on the nose and my car turned around. The car I was towing turned also by the force with which the Hudson was hit.

Plaintiff, in describing the actions of Mrs. K., testified on cross-examination: "She went along the highway and turned gradually to the west and possibly went 100 feet from the point where she first stopped, possibly 100 feet to where she turned to the right." When asked, "After crossing the center line of the road, how far did she proceed westward before the time of the collision?" he answered, "I

wouldn't swear. She might have always been on the center line. She turned right angles there and went west. She crossed to her own side of the highway, that is the right side, proceeded west possibly 100 feet from the point where she entered the street," and when asked if they met a hundred feet from the main street of Belfield he answered, "Yes." Again, he stated the collision took place about 100 feet west of the intersection. When asked, "If her car was on the right-hand side of the center line, the left-hand side was entirely open?" he said, "Possibly it was. I had no intention of turning to the left, I would never cross the center line if I couldn't see ahead or knew what was ahead." He admitted he was on the north side of the road all of the time, but said he never had any intention to pass her on the right-hand side of her car.

Plaintiff's wife testified they were about a block and a half from Mrs. K. when she turned west on #10—that is, about 150 yards. From the testimony of the plaintiff, it is clear defendant was on #10 about 100 feet at least from the intersection when he caught up with her. The plaintiff was traveling on the right side of the road. The clear intimation of his testimony is that Mrs. K. was so close to him when on the north side of the road, and was driving so slowly, that his car was abreast of the rear of her car even though he used his best endeavors to reduce speed; but had she continued westward for a short distance his speed would have been so reduced.

Much of the testimony offered by plaintiff is disputed, but we set forth his version in more detail as defendants are the appellants.

A witness for the plaintiff testified he saw Mrs. K. drive to the intersection and stop. He heard blasts from the plaintiff's car. He testified Mrs. K. started "at a slow pace across the road, they were gradually gaining. Before I knew it, there was a crash." He says when Mrs. K. started on #10 she was going at a slow pace and kept on traveling very slowly but steadily. She went straight west for a little time, "probably 50 or 75 feet west and turned, going north for a while." He saw plaintiff's car coming and "first noticed that they were going at a pretty good speed, but they were gradually slowing down," but he could not estimate the speed; that if Mrs. K. had

crossed #10 to a private road to the north he was pretty sure she would have cleared the highway before the plaintiff came.

In much of his testimony, the plaintiff is corroborated by his wife and contradicted in material matters by Mrs. K. and others. It is undisputed that #10 is "black-topped" 25 feet wide at all points involved, the road itself being approximately 60 feet wide; and that the south side of the highway was open and entirely unobstructed to passage at the time of the accident.

Defendants' version is that when Mrs. K. reached the intersection she looked to the east and there was no car between her and the crest of the hill, she looked westward and saw no car coming, then turned into #10 and proceeded west. She said she might have been near the center when on the north side. When she was on the right side of the road the collision took place, her contention being, of course, that plaintiff was coming at an excessive rate of speed. She testified plaintiff had not reached the crest of the east hill when she turned into the highway, that before plaintiff reached the crest he passed the road sign which warned travelers "to reduce speed to 25 miles per hour." The defendant Ed. Kaisershot and two disinterested witnesses testified the plaintiff said, when interrogated shortly after the accident, that he "came over the top of the hill east of Belfield at about 45 to 50 miles an hour," and that later, in talking it over, plaintiff and his wife agreed the speed was at least 35 or 40 miles. It is undisputed that when the collision took place, and Mrs. K. got out of the car, she exclaimed to the plaintiff, "Well, where did you come from? I didn't see you at all."

We refer to this because there is a serious question whether upon the record the plaintiff can recover at all in the light of his own testimony, and this involves the specification that the evidence is not sufficient to justify the verdict. Defendants made no motion for directed verdict, but on the motion for a new trial the specification of insufficiency of the evidence must be considered and the state of the evidence is such the court would have been justified in granting a new trial solely on this ground.

No rule is more firmly established in this jurisdiction than that the granting or refusing a new trial because "of the insufficiency of the

evidence to support the verdict invokes the discretion of the trial court, but the discretion is a legal discretion to be exercised in the interest of justice." This principle is discussed thoroughly in Kohlman v. Hyland, 56 ND 772, 777, 219 NW 228, 230. We need not set forth an extended list of our decisions in support of such statement.

That the verdict was the result of confusion on the part of the jury regarding the law applicable to the situation is indicated when we consider two of the errors alleged. The trial court gave a careful and somewhat lengthy exposition of the traffic laws. The court charged that right of way is not an absolute right, that one entitled thereto is not justified in plunging ahead regardless of risk, that one who arrives at an intersection from the left may enter the intersection even if a car is approaching from his right if he is so far in advance that "a reasonably prudent person would be justified in believing he had time to clear the intersection of the paths of the two vehicles before the other car arrived there."

The court also charged the jury as to the duty of the defendant to give a signal of intent to turn from a direct line. It is charged that this was error, as the failure to give a signal was not alleged as one of the acts of negligence of the defendant. We do not pass on this. The court charged that a failure to give the required signal would be immaterial if not the cause of the accident. But the court also instructed the jury, "If the failure of the defendant to give the proper signal was the cause or contributing factor for bringing on or causing the collision, *then the speed of the plaintiff's car would be immaterial.*"

The court charged with reference to contributory negligence:

"The burden of proving contributory negligence of the plaintiff is upon the defendant to establish the same by a fair preponderance of the evidence and that the negligence, if any, of the plaintiff contributed in some degree as a proximate cause of the injury."

The court charged on concurring negligence, to the effect that if "both parties were negligent and that the negligence of both parties was the proximate cause, then you should find for the defendants." However, in another portion of the charge the court said, when dealing with the subject of sole proximate cause, "If, on the other hand, you

find that the plaintiff was negligent and you further find that the plaintiff's negligence, if any, was the sole proximate cause of the collision, then you should return your verdict for the defendant."

The undisputed evidence shows that the defendant driver gave no signal when turning into the service station. But there was testimony showing excessive speed of the plaintiff. Under this charge the jury could well say, "We believe the plaintiff was guilty of excessive speed, but the defendant driver gave no signal and therefore we cannot consider the excessive speed." Again the court charged that if the negligence of the plaintiff was a proximate cause of the collision he could not recover even if the defendant was negligent. Yet, in dealing with the negligence of the plaintiff, the court charged that if the plaintiff was negligent they should find for the defendant in case the plaintiff's negligence, if any, was the sole proximate cause of the collision.

The evidence tends to indicate that the collision was the result of the negligence of both drivers. With this in mind the allegd errors in the instructions have an important bearing.

It is apparent that the portions of the charge with reference to the negligence of the plaintiff and necessity for giving a signal could not have been helpful to the jury in the light of the evidence, though at some places correctly stated, and must have been prejudicial to the rights of the defendants.

But the issue here is foreshadowed in Anderson v. Phillips, 40 ND 586, 169 NW 315, where no motion for directed verdict was made, merely a motion for a new trial, which motion was denied by the trial court. We held in this case cited that not only was the unsubstantial character of the evidence such that a verdict could not be based thereon, but the appellant would have been entitled to judgment notwithstanding the verdict had a motion for such been made. In the case at bar the evidence as to the negligence of the plaintiff is such that the interests of justice require the verdict be set aside.

An examination of the evidence leads some members of the court to believe that the rule laid down in First Nat. Bank v. Henry, 30 ND 324, 152 NW 668 should be applied to the effect that not only should the judgment appealed from be reversed, but "inasmuch as the evidence affirmatively discloses that the facts necessary to constitute a

cause of action do not exist, the district court" should be "directed to enter final judgment in favor of the defendant and against the plaintiff, dismissing the action, with costs." In this case cited no motion for judgment notwithstanding the verdict was made. The majority of the court, however, feel that the ends of justice are satisfied by remanding the case to the district court for a new trial. The order denying the new trial is reversed.

Morris, Ch. J., and Burr and Nuessle, JJ., concur.

Burke, J. (concurring specially.) I agree that the judgment in this case should be reversed. The testimony of the plaintiff affirmatively shows that the collision between his car and that of the defendant was proximately caused by the concurrent negligence of both the plaintiff and the defendant. The defect in plaintiff's proof is not a deficiency, it is that his proof establishes, as a matter of law, that he has no cause of action. 38 Am Jur 979, Negligence, § 286; 45 CJ 1174. In the circumstances a new trial will serve no good purpose. Despite the fact that the record discloses neither a motion for a directed verdict nor for judgment notwithstanding the verdict it would have been proper for the court to direct the entry of a judgment for the dismissal of this action in accord with our practice in First Nat. Bank v. Henry, 30 ND 324, 152 NW 668 and Hart v. Evanson, 14 ND 570, 105 NW 942, 3 LRA (NS) 438. Judge Christianson joins in this opinion.

Christianson, J., concurs.