Einar HAMRE, Plaintiff and Respondent,

v.

Andy SENGER, Defendant and Appellant.

No. 7618.

Supreme Court of North Dakota.

Oct. 26, 1956.

Degnan, Hager, McElroy & Lamb, Grand Forks, for defendant and appellant.

Day, Stokes, Vaaler & Gillig, Grand Forks, for plaintiff and respondent.

JOHNSON, Justice.

This is an action for damages brought by the plaintiff for the alienation of the

affections of his wife, Evelyn Hamre, alleged to have been brought about by the unlawful, wicked and malicious conduct of the defendant. He further alleges that the defendant, contriving to injure the plaintiff and deprive him of the company, society and assistance of his wife and to gain her affections, enticed her to have carnal relations with him and that he persisted in this unlawful and wrongful conduct thereby causing difficulty between the plaintiff and his wife and her refusal to cohabit and live with the plaintiff as his wife.

The defendant denied all the material allegations of the complaint and alleged on information and belief that the estrangement and separation of the plaintiff and his wife was caused by the plaintiff's own conduct toward his wife. The defendant also set up a counterclaim against the plaintiff alleging slander. The counterclaim, however, is not before us as it was dismissed upon motion.

This action was tried before a jury in Nelson County, on the 8th day of March, 1955. The jury brought in a verdict for defendant for dismissal of the action. The plaintiff made a motion for a new trial. This motion was based upon four grounds:

1. Irregularity in the proceedings of adverse party for which the plaintiff was prevented from having a fair trial;

2. Accident or surprise which ordinary prudence could not have guarded against;

3. Insufficiency of the evidence to justify the verdict;

4. Errors of law occurring at the trial and excepted to by the plaintiff.

With the motion for a new trial the plaintiff filed specifications of error covering the four alleged grounds urged as a basis for his motion.

The trial court granted a new trial based upon the second and third ground asserted by the plaintiff. The defendant made a motion for a rehearing to set aside the order granting the new trial and the re-entry of the judgment originally filed. This motion was denied. The defendant thereafter appealed from the order granting the motion for a new trial.

In this court the plaintiff and respondent moves to dismiss the appeal, basing his motion on delay and lack of diligence in the prosecution thereof. The plaintiff contends that he is entitled to a dismissal of the appeal under Sections 28–2734 and 28–2737, NDRC 1943. Both sections were repealed in 1947. However, they are in essence covered by the Rules of Practice of the Supreme Court.

To determine whether there is any basis for the motion to dismiss the appeal, we will examine the judgment roll to ascertain when the various steps in the appeal were taken.

The order setting aside the verdict and granting a new trial is dated August 31, 1955, and was served on the defendant's attorneys September 1, 1955. Order denying the defendant's motion to set aside the order granting the plaintiff a new trial was dated October 13, 1955. It was filed October 14, 1955. Thereafter on December 15, 1955, the defendant filed his notice of appeal and specifications of error together with an appeal bond. On April 10, 1956, the attorneys for the plaintiff signed a waiver of notice in which he waived the notice of motion to apply to the trial court for settlement of the case and certification of the correctness of the transcript, "the same having been served upon him." The court signed a certificate settling the statement of the case on April 19, 1956. The transcript was filed with the clerk of the district court of Nelson County on July 2, 1956. The defendant and appellant filed his brief in this court on July 9, 1956. The respondent filed his brief on motion to dismiss as well as on the merits on July 11, 1956. Section 28–2706, NDRC 1943, provides for the transmission of the perfected appeal to this court. It provides in part:

"If the appellant, within thirty days after his appeal is perfected, does not

cause a proper record in the case to be transmitted to the supreme court by the clerk of the district court, the respondent may cause such record to be transmitted by the clerk of the district court to the clerk of the supreme court, and in such case the respondent may recover the expense thereof as costs on such appeal in case the judgment or order appealed from is affirmed in whole or in part."

The notice of appeal, specifications of error and undertaking were filed on December 15, 1955. No transcript had been obtained of the evidence when the motion for a new trial was before the trial court. Whatever delay was involved in the procurement of the transcript was apparently not objectionable to the plaintiff in view of the waiver of notice of motion for settlement of the case and certificate of the correctness of the transcript signed by the plaintiff and respondent's attorneys on April 10, 1956. It is true that the record of the appeal was not filed in this court until the 9th day of July 1956. But it was within the power of the plaintiff and respondent under the authority of the statute to apply to the clerk for transmission of the appeal record to the clerk of this court. This he did not do. While that would not necessarily preclude a dismissal in case of unwarranted delay, it is a fact to be considered when a party moves to dismiss an appeal on account of delay or lack of diligence in the prosecution thereof. It is true that the appellant did not apply for any additional time or an extension to do any of the acts required to complete the perfection of the record of appeal. The appeal was argued during the September term, 1956.

■■■ An appeal is deemed perfected, in civil cases, upon both the service and the filing of a notice of appeal with an undertaking on appeal. Rule 21, Rules of Practice, North Dakota Supreme Court, 76 N.D. xxii. While under Rule 31 a failure to comply with any of the requirements of the Supreme Court rules within the time or in the manner provided, shall constitute a ground for dismissal of the appeal, the rule indicates that dismissal is discretionary and the failure to comply with the rules does not deprive the court of jurisdiction. The respondent does not have an absolute right to a dismissal of the appeal. The court may, in its discretion, refuse to dismiss the appeal, where the delay in the filing of the appeal has not resulted in any inconvenience, detriment, or prejudice to the respondent or occasioned any delay in the hearing of the appeal and the submission of the cause. See 4 C.J.S., Appeal and Error, § 1092, pp. 1551, 1552 and 1553. The entire record is before us. It was filed by the appellant and the default in the perfection of the record on appeal has been cured by affirmative action before the respondent made any objection. No argument has been presented to show that such delay as occurred in the perfecting of the record has resulted in any inconvenience, detriment or prejudice to the respondent. The courts favor disposition of cases on the merits. The motion to dismiss the appeal is denied.

We will now consider the appeal on its merits.

The defendant assigns two errors of law as a basis for his contentions:

"1. That the court erred in finding that the verdict was contrary to the weight of the evidence, and that there was surprise evidence which ordinary prudence would not have guarded against, and granting a new trial herein.

"2. That the court manifestly abused its discretion in granting a new trial herein."

The respondent has abandoned his first and fourth grounds for a new trial as he argues on appeal only the two grounds used by the court as a basis for granting the same, accident or surprise which ordinary prudence could not have guarded against, and the insufficiency of the evi-

dence to justify the verdict. Both of these involve the necessity of setting forth the evidence presented by the parties.

The plaintiff and the defendant were neighbors living on adjoining farms near Petersburg, North Dakota. The farms were about a quarter of a mile apart. The families of the parties became acquainted, visited back and forth, and the defendant on occasion helped the plaintiff with chores. On the 15th of July, 1952, while the plaintiff was out in the field, he saw the defendant's pickup in the yard. He drove his tractor to within a few rods of the house, left it, and walked to the kitchen door, and as he opened the door, he says that he heard a noise "like four feet hit the floor". He walked in through the kitchen to the living room and testified that he found the defendant in the bedroom adjusting his trousers and that the plaintiff's wife, Evelyn Hamre, was going upstairs. The stairway was in the bedroom. He claims that he accused the defendant of adultery with his wife. The defendant denies this. He says that the plaintiff at the time did not charge him with any misconduct; that he went outside and was followed by the plaintiff. Thereafter he drove home. The plaintiff also testified that the defendant had admitted in the presence of witnesses intimacy with his wife. He produced no witnesses to corroborate him in this connection. A defense witness testified to a conversation between the plaintiff and his wife when he and they went for a five mile ride. In that conversation the plaintiff accused his wife of intimacy with the defendant. She denied the accusation saying, "No, that is not so, Einar."

On cross-examination it was brought out that the plaintiff was addicted to the use of intoxicating liquor and got drunk "occasionally." After the incident of July 15, 1952, the plaintiff admits that he drank more than was usual. However, the plaintiff and his wife, Evelyn Hamre, continued to live together after this incident. She left her husband for about a week at Christmas time,

1952. In about March 1954 she left the plaintiff permanently and continues to live separate and apart from him. In May of 1954 Evelyn Hamre brought an action for divorce based upon extreme cruelty and cruel and inhuman treatment brought about by abusive conduct of the plaintiff towards her, which she alleged was due to excessive use of intoxicating liquor.

The defendant took the stand in his own behalf. His testimony generally is in direct conflict with the testimony of the plaintiff. He states that he went to the Hamre farm on July 15, 1952, to get a paint brush. He does not remember whether it was one that had been loaned to the Hamres or whether he was to borrow it. He says that Mrs. Hamre was out in front of the house when he came, and that she asked him what he had come for; that they talked a while and that she went into the house to get the paint brush and that the defendant followed her; that she wanted him to help her move some furniture and that is the reason why he went into the house. He says that at about the time Mr. Hamre came in Mrs. Hamre was going upstairs to get the paint brush and that he was standing in the doorway of the bedroom where the stairway is located. He specifically denies that Mr. Hamre said anything to him about any improper action on his part.

"Q. Did Mr. Hamre at that time say anything to you about any improper action on your part? A. No."

He testified that later Mr. Hamre did charge him with improper conduct towards his wife. He testified somewhat to the drinking habits of Mr. Hamre, the plaintiff. The defendant was asked:

"Q. Did you ever at any time have any improper relations, sexual relations, with Evelyn? A. No.

"Q. Did you ever tell or admit to Einar Hamre that you did? A. No.

"Q. Did you ever have any conversation with Einar Hamre in the

presence of Evelyn Hamre on the evening of July 15, 1952, as testified to by Einar Hamre? A. No.

"Q. Did you at some date after that time have a conversation with Einar Hamre wherein he told you he was going to charge you with something? A. Yes.

"Q. Do you remember what that conversation was about? A. It didn't make much sense. He was drunk."

Later the defendant testified that it was only when Einar Hamre was under the influence of intoxicating liquor that he made charges against the defendant.

Dorothy Senger testified for her husband, the defendant. She particularly recalled that Einar Hamre, after July 15, 1952, came to the defendant's farm and would "accuse Andy, and Andy would deny it or say nothing about it. And Einar would always be drinking, and he would want to start a fight." On cross-examination she was asked:

"The farm home in which you live is located a quarter of a mile southeast of the place where the Hamres lived. That has a grove around it, does it not?

"A. Rather an old farm.

"Q. The farm that you lived, right east of Hamres? A. It has a grove, but you can see out.

"Q. There are trees to the west of the house, and there is trees to the north of the house? A. Yes."

It is claimed by the plaintiff that this testimony of Dorothy Senger was a surprise and is set forth in an affidavit by Mr. Stokes filed in support of the motion for a new trial. It states:

"That on cross-examination affiant asked said witness if it was not true that there were trees located between the house, both on the west and north side of the house, obstructing the view of the Plaintiff's house. That said witness testified that there was an opening in said trees through which it was visible. That the day following the trial of said action, affiant was in the vicinity of these farms and went and examined the premises and states under oath that there is no opening in the trees."

As far as we can determine, there is no testimony in the record to the effect that Dorothy Senger could see the farm yard of the Hamre place through an opening in the trees. She admitted that there was a grove of trees to the west and the north of the house, "but you can see out." She was never asked whether she could see through the grove of trees towards the Hamre farm. Even if we were to assume that the testimony of Dorothy Senger in this connection could properly be interpreted as has been done by the plaintiff, no element of surprise was involved. Einar Hamre, the plaintiff, was called in rebuttal. He positively states that there was no break in the trees. He also stated that from the Senger farm you cannot see the yard in front of the Hamre house. Thus there is a square conflict in the evidence as to whether it was possible to see from the Senger house to the Hamre house. The plaintiff refutes the testimony of Dorothy Senger as to the possibility of seeing through the trees to the house on the Hamre farm. It was a fact with which he was apparently acquainted. Hence he cannot claim surprise.

■ Section 28–1902, NDRC 1943 governs with reference to the causes for a new trial. It is the settled law of this state that the causes enumerated as grounds for a new trial therein are exclusive.

■ Accident or surprise mentioned in the statute as a ground for a new trial denotes an occurrence out of the usual course of events which happens suddenly or unexpectedly without any design on the part of the person affected and which ordinary prudence could not have guarded against.

Baird v. Kensal Light & Power Co., 63 N.D. 88, 246 N.W. 279. There was no surprise within the rule thus announced in the case at bar.

■ The trial of this action started on March 8, 1955. It was concluded on March 9, 1955. The trial was only a short distance from the two farms on which the parties lived at the time of the alleged incident. There was ample time to investigate the testimony of Dorothy Senger to determine whether it was true or not. It has been held that upon a motion for a new trial on the grounds that the moving party was surprised by evidence produced by his adversary, it will not be granted as a matter of right where it appears that the moving party submitted his case without moving for a continuance or asking for an opportunity to procure further testimony. As a general rule, a party asking for a new trial on the ground of surprise at evidence must have indicated his surprise to the court at the time, and should not have proceeded with the trial and speculated on the chances of a favorable verdict, but should have asked for delay or a continuance to enable him to overcome the effect of such evidence. 66 C.J.S., New Trial, § 99 subd. g. Surprise at Evidence, p. 287; Robbins v. Robbins, N.D., 70 N.W.2d 37. No request for continuance was made in this case by the plaintiff nor was any request made for an opportunity to procure further testimony to contradict Dorothy Senger.

■ A new trial will ordinarily not be granted for surprise or accident unless it appears probable that, except for the surprise or accident, a different verdict would have been rendered or a new trial will probably result in a changed verdict. 66 C.J.S., New Trial, § 100, p. 289; Sward v. Nash, 230 Minn. 100, 40 N.W.2d 828. We believe that there was no basis for granting a new trial on the ground of accident or surprise which ordinary prudence could not have guarded against.

We now come to the consideration of the contention that the evidence was insufficient to sustain the verdict.

■ The testimony in this action upon all of the ultimate facts involved is squarely in conflict. The weight of the evidence and the credibility of the witnesses was a question for the jury. It determined the facts in favor of the defendant. There is ample evidence in the record to sustain the verdict of the jury. Under these circumstances was it error for the trial court to grant a new trial on the basis of the insufficiency of the evidence to sustain the verdict?

"Whether a new trial shall be granted rests largely in the sound discretion of the trial court, and an order granting the motion therefor will not be disturbed unless it can be said that there was an abuse of that discretion. Martin v. Parkins, 55 N.D. 339, 213 N.W. 574, and cases cited; Blum v. Standard Oil Co., 68 N.D. 329, 279 N.W. 764; State v. McEnroe, 68 N.D. 615, 283 N.W. 57; and authorities cited in the foregoing cases. But this discretion is a legal discretion to be exercised in the interest of justice, so if it appears on the record that the party making the motion has not made a case and there is no reasonable probability that on a new trial he can make a case, an order granting a new trial will not be sustained. Kohlman v. Hyland, 56 N.D. 772, 219 N.W. 228, and authorities cited therein." Schnell v. Northern Pac. Ry. Co., 71 N.D. 369, 380, 1 N.W.2d 56, 62.

■ While the granting of a new trial based on the weight of the evidence involves the discretion of the trial court, this discretion must not be abused and is to be exercised in the interests of justice. If a verdict is amply supported by the evidence, it is an abuse of discretion to grant a new trial. In this case the great preponderance of the credible evidence is in favor of the verdict. In such case it is an abuse of dis-

48

cretion to grant a new trial. See 66 C.J.S., New Trial, § 201, p. 497; Martin v. Smith, 103 Cal.App.2d 894, 230 P.2d 679; Scott v. Matsuda, 127 Colo. 267, 255 P.2d 403; Sanchotena v. Tower Co., 74 Idaho 541, 264 P.2d 1021.

Viewing the evidence in the light most favorable to the verdict, as we must do, there is ample evidence in the record to sustain the verdict. The evidence of the plaintiff is wholly uncorroborated. It is entirely circumstantial. In all of its essential details it was denied by the defendant and his witnesses. The plaintiff's evidence at most points to some suspicious circumstances, all of which were apparently explained to the satisfaction of the jury, as determined by its verdict.

The order of the trial court is accordingly reversed.

BURKE, C. J., and SATHRE, MORRIS and GRIMSON, JJ., concur.