CHICAGO, MILWAUKEE, ST. PAUL AND PACIFIC RAILROAD COMPANY, a corporation, Plaintiff and Respondent,

v.

JOHNSTON'S FUEL LINERS, INC., a corporation, Defendant and Third-Party Plaintiff and Appellant,

v.

Leonard PRINCE, an individual doing business under the trade name of Regent Oil Company, Third-Party Defendant and Respondent.

No. 8144.

Supreme Court of North Dakota.

Aug. 21, 1964.

Rehearing Denied Sept. 11, 1964.

See also 130 N.W.2d 165.

Conmy & Conmy, Bismarck, for defendant and third-party plaintiff and appellant.

Donald R. Crabtree, Ellendale, and Campbell, Voas & Richardson, Aberdeen, S. D., for plaintiff and respondent.

Mackoff, Kellogg, Muggli & Kirby, Dickinson, and Rausch & Chapman, Bismarck, for third-party defendant and respondent.

TEIGEN, Judge.

This is an appeal from an order granting a new trial to a third-party defendant in an action for damages sounding in tort in which the third-party defendant was impleaded for liability over.

This is the second appeal in this case. The first opinion is contained in 122 N.W.2d 140. In that case we sustained the trial court's order overruling the defendant's motion for judgment notwithstanding the verdict and affirmed the judgment in favor of the plaintiff against the defendant. We also reversed the trial court's order granting judgment notwithstanding the verdict in favor of the third-party defendant, subject, however, "to the right of the respondent [third-party defendant], Leonard Prince, to proceed promptly to press for a ruling on his motion for a new trial." The third-party defendant in its original motion had moved in the alternative for judgment notwithstanding the verdict or a new trial. The trial court, in granting the motion for judgment notwithstanding the verdict, did not decide the motion for new trial as it should have done under Rule 50(c), North Dakota Rules of Civil Procedure. Therefore, we permitted the movant to press for a ruling after remittitur.

The third-party defendant, Prince, after the remittitur in the first case, pressed for a ruling on his motion for a new trial. It was granted by the trial court. This is the order with which we are concerned in this appeal.

For the sake of convenience, Chicago, Milwaukee, St. Paul and Pacific Railroad Company, a corporation, the plaintiff in this action, will hereinafter be referred to as the railroad. Johnston's Fuel Liners, Inc., a corporation, the defendant and third-party plaintiff, will be referred to as Johnston's. Leonard Prince, an individual doing business under the trade name of Regent Oil Company, the third-party defendant, will be referred to as Prince.

A thumbnail sketch of the history of the case may be stated thus: The plaintiff, the railroad, sued the defendant, Johnston's, for damages to its railroad property resulting from a gasoline fire that occurred when the third-party defendant's, Prince's, gasoline storage tanks caught fire while one of the tanks was being filled by the defendant, Johnston's, which is a gasoline transportation company. The plaintiff, the railroad, alleged negligence on the part of the defendant, Johnston's, as the proximate cause of its damage.

The defendant, Johnston's, impleaded Prince, as third-party defendant, for liability over, alleging negligence on the part of Prince. Johnston's also prayed for judgment against Prince for its loss and damage. The third-party defendant, Prince, denied negligence on his part, alleged negligence on the part of the defendant, Johnston's, and counterclaimed against Johnston's for his loss as a result of the fire.

The case was tried to a jury. The jury returned a verdict in four parts: (1) In

favor of the plaintiff, the railroad, and against the defendant, Johnston's, and assessed damages; (2) In favor of Johnston's and against the third-party defendant, Prince, for liability over and assessed the amount; (3) Against Johnston's in its claim against the third-party defendant, Prince, for Johnston's damages as a result of the fire; and (4) Against the third-party defendant, Prince, and in favor of Johnston's on Prince's counterclaim.

The new trial was granted on the ground of insufficiency of the evidence to justify the verdict.

The trial court, in its written memorandum filed with the order granting new trial, prefaced its opinion with the following statement:

> "My opinion on the physical facts, as disclosed by the record, and my conclusions that the negligent acts, if any, of Prince, were not a proximate cause of the damages to plaintiffs' properties, are very positive and directly contrary to those of the Supreme Court. In granting the motion of Prince for a new trial I am exercising my judgment and discretion, as I should have on January 4, 1962, under rule 50 c, when I wrote my opinion determining that Prince was entitled to Judgment Notwithstanding the Verdict. I am still of the same opinion and in writing this memorandum now, after the decisions of the Supreme Court, I wish to say that I do recognize that the Supreme Court has the final say, and I am not assuming an attitude of defiance or attempting to display any disrespect."

In the former appeal, this court found the trial court in error when it granted judgment notwithstanding the verdict in favor of Prince, the third-party defendant, for the reason that the evidence, when viewed in the light most favorable to the plaintiff and Johnston's, as third-party plaintiff, who were the prevailing parties, permitted a finding by the jury that the proximate cause of plaintiff's damages was the concurrent negligence of both Johnston's and Prince. We held it was error for the trial court to grant the motion of Prince, third-party defendant, for judgment notwithstanding the verdict. We applied the rule that on a motion for judgment notwithstanding the verdict, the evidence will be construed most favorably to the party against whom such judgment is sought, and that the questions of negligence and proximate cause are questions of fact for the jury in tort actions, unless the evidence is such that reasonable minds can draw but one conclusion therefrom.

Applying these rules we found the facts were not such that but one conclusion could be drawn therefrom by reasonable minds. We granted Prince leave to press for a ruling on his alternate motion for new trial because justice required he be permitted to obtain a ruling thereon in view of our procedural rule. Rule 50(c), N.D.R.Civ.P.

■ A motion for judgment notwithstanding the verdict does not go to the weight of the evidence and such judgment should not be granted, unless the moving party is entitled to judgment as a matter of law. Richmire v. Andrews & Gage Elevator Co., 11 N.D. 453, 92 N.W. 819; State v. Yellow Cab Co., 62 N.D. 733, 245 N.W. 382; Taylor v. Minneapolis, St. P. & S. S. N. Ry. Co., 63 N.D. 332, 248 N.W. 268; La Bree v. Dakota Tractor & Equipment Co., 69 N.D. 561, 288 N.W. 476; Smith v. Knutson, 76 N.D. 375, 36 N.W.2d 323; Dahl v. North American Creameries, N.D., 61 N.W.2d 916.

■ The foregoing rule does not apply in considering a motion for new trial on the ground urged here of insufficiency of the evidence to justify the verdict. It is well established that a motion for a new trial on the ground of insufficiency of the evidence to justify the verdict invokes the legal discretion of the trial court to be exercised in the interest of justice. Kohlman v. Hyland, 56 N.D. 772, 219 N.W. 228; Delaloye v. Kaisershot, 72 N.D. 637, 10 N.W.2d 593; Hochstetler v. Graber, 78

N.D. 90, 48 N.W.2d 15; McDermott v. Sway, 78 N.D. 521, 50 N.W.2d 235; Haser v. Pape, 78 N.D. 481, 50 N.W.2d 240; Mann v. Policyholders' National Life Insurance Co., 78 N.D. 724, 51 N.W.2d 853; and Maier v. Holzer, N.D., 123 N.W.2d 29.

Where it appears to the trial court that the verdict is against the weight of the evidence, it is the duty of the trial court to set the verdict aside and grant new trial. Crossen v. Rognlie, N.D., 68 N.W.2d 110; Hoffman v. Berger, N.D., 76 N.W.2d 515; Hamre v. Senger, N.D., 79 N.W.2d 41; and Long v. People's Department Store, N.D., 95 N.W.2d 904.

Upon this appeal Johnston's, the third-party plaintiff, specifies: (1) The trial court was barred by the Supreme Court's decision in the first appeal from granting new trial on the ground of insufficiency of the evidence; (2) If it was not barred, it abused its discretion in granting a new trial; and (3) It erred in granting new trial to Prince alone and, if new trial is to be granted, it should be granted to Johnston's also.

The first specification, we believe, has already been answered. It has no merit. The trial court has discretion within limits to be exercised in the interests of justice in ruling upon a motion for new trial. Different rules apply to the two types of motion. A judgment notwithstanding the verdict determines the issues; whereas, an order granting a new trial leaves the issues where they were before trial and for trial anew to a different jury. On the basis of these rules and the difference in the nature of the relief granted, the state of the evidence may be such that the trial court is not warranted in granting judgment notwithstanding the verdict but is warranted in granting a new trial.

Johnston's second specification is that the court abused its discretion in that the cause or ground upon which the trial court relied did not have actual existence. It cites in support thereof Kohlman v. Hyland, supra.

We note that in our former decision, after having reviewed the evidence in the light most favorable to the prevailing parties, including the third-party plaintiff, Johnston's, we concluded "reasonable minds could differ" and, therefore, the case was properly one for the jury to decide.

One test as to whether a decision is within the discretion of the court is whether or not the question may properly be decided either way. Kohlman v. Hyland, supra.

The trial court, in its memorandum, stated the argument on the motion for new trial was confined to the question of proximate cause and its decision is made on the premise that the facts do not sustain the verdict of the jury on its finding that the acts of negligence, if any, by Prince were a proximate cause of the damages to the plaintiff, the railroad. In consideration of the second specification, we have again reviewed the evidence in this case sufficiently to point out issues of fact on the question of proximate cause of the plaintiff railroad's loss.

Johnston's delivered a truck-transport load of gasoline to Prince at Prince's bulk station located adjacent to the plaintiff's railroad property. Johnston's employee in charge of the truck transport, after being directed by Prince's employee to Prince's bulk station, proceeded to unload the gasoline into Prince's storage tank No. 3. This was the proper tank. Johnston's provided all of the equipment, including pump with gasoline engine, hoses and couplers (except one furnished by Prince) for this purpose and performed the work. The portable pump with engine was placed on the ground between Prince's storage tank and Johnston's transport. A hose connected the tank to the pump and another hose connected the pump to the transport. Prince's vertical storage tank had an intake pipe and manual valve control near the bottom, which valve was opened by Prince's employee when Johnston's employee had made the required connections. Some trouble was encountered by Johnston's employee in start-

ing the pumping operation because of an air lock. This necessitated the temporary loosening of a coupler at the pump. Some gasoline was spilled in the process. The amount was not determined but one statement was that it did not exceed a cupful. Prince's storage tank had a capacity of about 17,300 gallons but was partially filled. Johnston's transport contained about 8,000 gallons of gasoline. No determination was made of the amount of gasoline contained in the storage tank before the unloading operations commenced.

The gasoline from the transport was then pumped into a storage tank at the rate of from 70 to 90 gallons per minute. The pumping operation continued until the transport was almost empty when it was discovered that the engine operating the gasoline pump was laboring and gasoline was coming over the top of Prince's storage tank and flowing down the side. There was an air vent at the top of the tank. Johnston's employee then closed the trip shut-off valve on the transport to stop the flow of gasoline from the transport and went to the gasoline engine attached to the pump to stop it by shorting the ignition. This was to be accomplished by touching a metal strap, attached to the engine, to the spark plug of the engine. An explosion occurred resulting in a fire that consumed all of the gasoline, destroyed Prince's storage tanks, Johnston's transport, and damaged the plaintiff's railroad property, as well as other property in the area belonging to other persons. Other suits are pending for these losses.

The evidence discloses the day was hot, from 85 to 100 degrees, and the air calm. Gasoline vapor is from three to four times heavier than air and, under the conditions described, tends to settle in the lower areas. The engine and pump were located in a depression. When gasoline is pumped into a storage tank, it displaces gasoline vapor contained therein which is permitted to escape through the air vent at the top of the tank. Almost 8,000 gallons of gasoline vapor had escaped from the storage

tank in this manner during the pumping operation. Gasoline vapor of proper density may be ignited by a spark, flame or heat. The evidence does not establish whether or not Johnston's employee shorted the engine but he intended to stop it by this method. The explosion was violent and occurred simultaneously with the attempt to short the engine and stop it. His testimony as to whether or not he actually shorted the engine is not clear. Shorting the engine to stop it ordinarily creates a spark. No evidence was produced indicating any other cause for the explosion.

The explosion caused a fire. The fire caused the damage complained of. The gasoline vapor in the immediate area at the time of the explosion was consumed by the explosion. It did not continue to burn. The fuel for the resulting fire consisted of gasoline escaping from Prince's storage tank. Two theories were advanced by respective counsel as to how this fuel was supplied. The third-party plaintiff argues the evidence establishes the fuel consisted of gasoline which ran down the side of the storage tank and into the gravel bed at the base of the storage tank. This gravel bed extended beyond the perimeter of the base of the tank several feet and this area was fenced. There was evidence that the first fire was seen in the weeds located in this fence. The pump and engine were located some distance farther from the storage tank. Thus, he argues, the failure of Prince to measure or otherwise determine the amount of gasoline stored in the storage tank before the unloading operation began, and the granting of permission to Johnston's to pump a large quantity of gasoline into a tank that would not accommodate the quantity to be placed therein, was negligence and was the proximate cause of the fire.

Prince, third-party defendant, argues the evidence establishes the explosion ignited gasoline in the area of the pump and that the explosion blew off the intake pipe of the pump to which the hose leading from the storage tank was attached. It also

separated the pipe from the hose. This permitted a free flow of gasoline from the storage tank through the end of the hose lying near the pump and fueled the fire. Prince further argues that if he was negligent, as claimed by Johnston's, his negligence was not a proximate cause of the resulting fire which caused the damage.

The trial court reasons that the gasoline spilled at the location of the pump, when Johnston's employee bled the hose to eliminate the air lock, was ignited by the explosion. The spilled gasoline was located below the hose leading from the tank and, when this gasoline burned, it also burned the hose. This provided a free flow of gasoline from the tank into the fire area and fueled the resulting inferno. The trial judge found there was no evidence to establish that the gasoline running from the top of the tank ever reached the ground. The trial court found that the burning of the gasoline on the side of the tank could not have burned the hose because that fire was above the hose.

Both parties agree it was the fire that caused the damage and not the explosion. It is probable that the explosion was caused by a spark emitting from the spark plug of the pump's engine when Johnston's employee chose to stop it. Prince argues the equipment was not safe to use for this type of operation and that its use has been discontinued by most gasoline transport companies. Some evidence supports this argument.

There is some conflict in the evidence and in some areas the evidence is not clear. There is testimony that fire was seen burning in the weeds in the area of the fence around the tanks. There is also evidence to indicate fire was first seen in the area of the pump, several feet from the fence. The only eye witnesses to the explosion that testified were Prince and Johnston's employee. Another witness who saw the fire from a distance a very short time after it commenced burning also testified. On the basis of the evidence as we see it and upon the whole record, several conclusions can be drawn.

The trial court in its memorandum stated:

"There is no evidence that any of the gasoline which overflowed from the bulk tank reached or flowed over to the Fuel Liners' pump or hose, or that any of the fire resulting from the overflow of gasoline from Prince's tank, burned the hose connecting the pump to Prince's pipeline. Nor can there be any presumption that such was the case. The pump and the end of the hose which connected to Prince's pipeline were at least 17 feet from the nearest end or side of the bulk storage tank."

The trial court reasoned that heat from fire rises upward; therefore, heat from gasoline burning on the side of the tank could not possibly have burned the hose which was below it. It concludes the fire at the side of the bulk tank and the one at the pump were undoubtedly burning at the same time but that they were separate and apart; that there can be but one conclusion from the evidence and that is "the fire resulting from the gasoline spilled by King burned the hose connecting the Fuel Liners' pump with Prince's pipeline, and released the 17000 gallons of gasoline in the storage tanks." The trial court concludes, therefore, that Prince's acts or his failure to act resulted only in the overflowing of the storage tanks. This did not cause the fire which burned the hose, nor did it permit gasoline to escape from the hose. It found: "It is evident that if the storage tank had not overflowed, the hose in question still would have burned and caused the same fire which damaged plaintiffs' property." The court concludes that new trial should be granted on the grounds of insufficiency and entire lack of evidence to sustain the verdict of the jury. Based on these findings, the acts of negligence by Prince, if any, were not a proximate cause of the damage to the plaintiff.

The testimony from which these various theories may have arisen, we believe, may succinctly be quoted as follows:

Johnston's employee testified, in part:

"Q. And where was the first place after the explosion that you saw fire?

"A. I believe it was in the fence and the weeds and so forth?

"Q. In the fence?

"A. Between the pump and the receiving tank.

"Q. The first place you saw fire was between the pump and tank No. 3?

"A. I believe so, yes.

\*　　\*　　\*　　\*　　\*　　\*

"Q. Was the whole area on fire between the pump and the tanks?

"A. There was no fire right around the pump itself then that I noticed.

\*　　\*　　\*　　\*　　\*　　\*

"Q. At any time from the explosion on did you see the fire going up the side of the receiving tank?

"A. Yes, I did.

"Q. And when did you see that?

"A. I am not certain whether it was before I became dizzy or after.

"Q. At the gasoline that you say you saw coming out of the top of the receiving tank—at the time of the explosion do you know where this gasoline—how much had come out and where it was located?

"A. No, I don't.

"Q. Can you state that that gasoline had reached the ground?

"A. No, I can't.

"Q. Can you state that it had run over to the engine?

"A. It hadn't run that far, I am certain.

"Q. So that you were sure there was no gasoline, raw gasoline, at the engine at the time of the explosion?

"A. I believe that is correct, yes."

Mr. Prince, who was also present, testified in respect thereto, in part, as follows:

"Q. Did you see a fire at any time after this explosion?

"A. When I turned around after catching Mr. King I observed a fire at that point.

"Q. That was the first time you saw a fire?

"A. That was the first time I observed, and the location—

"Q. You observed a fire at that time?

"A. Yes.

"Q. Where was the fire?

"A. Around the pump and crawling toward the tanks and around the ground in that entire area.

"Q. And you say it was traveling toward the tanks?

"A. Yes. There was fire going in that direction."

Mr. Gatzke, third-party observer, testified he was driving about three blocks from the fire when he saw it and described it as follows:

"Q. And did you observe anything unusual as you were coming into Regent?

"A. Well, as we could see we seen some fire there.

"Q. Some fire where?

"A. By the Regent Oil tanks.

"Q. Would you describe that fire?

"A. Well, it was about 10 feet high, the fire, at that time, so we just kept on driving into town.

"Q. Where was the fire located?

"A. At the Regent Oil tanks.

"Q. To the north or south of the tanks or adjacent to the tanks?

"A. On the unloading side of the tanks.

"Q. How high did you say the flames were?

"A. Roughly, maybe a car height.

"Q. And the area encompassed by the fire. Do you know roughly how large that was?

"A. That was, I couldn't really say it was very large then.

* * * * * *

"Q. Did you see the fire go up the side of the tanks?

"A. No, I didn't. I just seen it. I didn't see it go up the side of the tanks.

* * * * * *

"Q. Was it at the top of the tanks?

"A. No, it wasn't."

He then testified he drove to put in a fire alarm and found that Mr. Prince had done so. He then returned to the scene of the fire and testified as to his observations as follows:

"Q. Did you return to the fire?

"A. Yes, I did.

"Q. What was the condition of the fire?

"A. It was up to the top of the tanks and burning really good then.

"Q. Up at the top of the tanks. Was there fire on top?

"A. No, it was burning up, going up the side of the tanks, not on the top.

"Q. About how long did it take you to go from the Co-op store to the fire whistle and come back?

"A. Ten to 15 minutes."

On cross-examination he testified, in part, as follows:

"Q. Mr. Gatzke, I understand you first drove up and made an observation of the fire and drove away and came back again?

"A. That's right.

"Q. When you first made an observation of the fire it was about as high as a car?

"A. Um-hmm.

"Q. It was in the area between the warehouse and the receiving tanks?

"A. That's right.

"Q. Around that truck?

"A. Um-hmm.

"Q. And it hadn't gone up the sides of the tanks at that time?

"A. No.

"Q. The fire was pretty much in the middle of the area between the tanks and the warehouse, is that right?

"A. That's right."

The trial court has made it clear that, in its opinion, the evidence was insufficient to justify the verdict against Prince for liability over on the ground that the evidence does not satisfactorily establish that Prince's negligence, if any, was a proximate cause of the damage to the plaintiff.

Upon re-examination of this evidence, we reaffirm the statements contained in our

first decision that "the evidence was such that reasonable minds could differ" on the question of proximate cause.

■ A motion for new trial on the ground of insufficiency of the evidence is addressed to the sound discretion of the trial court. The granting of such a motion will not be disturbed upon appeal, except for manifest abuse of discretion. Crossen v. Rognlie, supra; Hoffman v. Berger, supra; and Long v. People's Department Store, supra.

In Hoffman v. Berger, supra, we said:

"In the consideration of such motions trial courts are not confined to a consideration of whether the verdict and judgment are supported by substantial evidence. 'A margin of discretion is vested in trial courts, which permits them, with a view to promoting the ends of justice, to weigh the evidence, and, within certain limitations, act upon their own judgment with reference to its weight and credibility. Nor, in such cases will the court necessarily be governed by the fact that the verdict returned has the support of an apparent preponderance of the evidence. Unrighteous verdicts sometimes are supported by apparently substantial evidence, and to meet such exceptional cases the presiding judge, who sees and hears the witnesses, is vested with a discretion to vacate such verdicts and order a new trial in furtherance of justice.' Pengilly v. J. I. Case Threshing Mach. Co., 11 N.D. 249, 255, 91 N.W. 63, 66." Hoffman v. Berger, N.D., 76 N.W.2d 515, 517.

■ We find the trial court did not abuse its discretion.

■ As a final challenge to the validity of the court's order granting new trial, the appellant, Johnston's (original defendant and third-party plaintiff), specifies the court erred in granting a new trial to Prince, third-party defendant, alone. It argues that if a new trial is to be granted to Prince, it should also be granted to Johnston's. Various arguments are made but are not applicable here because the appellant has construed the defendant, Johnston's, and the third-party defendant, Prince, as joint defendants in the main action. They are not joint defendants. The original plaintiff took no steps to make the third-party defendant a defendant in the main action, either by amendment of its complaint or by the service of any additional pleadings. It elected to stand on its original complaint against Johnston's alone.

The third-party proceeding was initiated by the appellant, Johnston's, who was named as the original defendant in the main action and who became the third-party plaintiff in the ancillary third-party proceeding. The third-party proceeding was brought for liability over and this is clear. It was brought under the rule of third-party practice. Rule 14, North Dakota Rules of Civil Procedure. The prayer of the third-party complaint prays that the defendant in the main action, as a third-party plaintiff, "have Judgment against the Third-Party Defendant for any sum that may be adjudged against it, if any, in favor of the Plaintiff."

The third-party plaintiff in its third-party complaint, in addition to asking for liability over, also pleads a second cause of action. It alleges negligence on the part of the third-party defendant as a proximate cause of the fire and prays for judgment in its favor against the third-party defendant for its losses as a result of the fire. In other words, the original defendant, as a third-party plaintiff, claimed more than the original plaintiff was claiming. It attempts to set up a new cause of action based on the same occurrence. We do not pass on the question of whether or not this is permissible under the third-party practice rule cited above. The rule states that a defendant, who claims that a person not a party to the action is liable to him "for all or part of

the plaintiff's claim against him," may, as a third-party plaintiff, implead such person as a third-party defendant. This would seem to negative a third-party claim for more than the plaintiff's claim against the original defendant. However, there was no motion to strike or dismiss the second cause of action alleged in the third-party complaint and the issue was litigated and resulted in a verdict of dismissal. The third-party defendant, as an affirmative defense to the second cause of action of the third-party complaint, alleged contributory negligence. The original defendant, Johnston's, has been adjudged negligent in the main case and its negligence was determined by the jury to be the proximate cause of the fire which caused plaintiff's damage. It was the same fire that caused the defendant's, Johnston's, loss for which it sought damages by its second cause of action against the third-party defendant in its third-party complaint. The plaintiff's judgment against the original defendant is now final. The question of contributory negligence pleaded by the third-party defendant, as an affirmative defense, has been judicially established as a fact in the main case where it was determined that Johnston's was negligent and its negligence was a proximate cause of the fire.

The jury also found the defendant was not entitled to recover for its loss from the third-party defendant. The trial court, in considering the motion for new trial, did not find the evidence insufficient to justify this verdict. Defendant did not move for a new trial in the main case. It permitted the plaintiff's judgment to become final. We have reviewed the evidence and find there was no error in failing to grant a new trial to the defendant on its second cause of action and that the trial court did not abuse its discretion.

The present situation is quite analogous to one where a plaintiff has final judgment and the defendant brings suit for contribution against an alleged joint tort-feasor for contribution under Chapter 32–28, N.D.C.C., and also brings an action for its own damages resulting from the same tort.

The trial court in granting motion for new trial in its order states, in part, as follows:

"That the Defendant, Leonard Prince, an individual doing business under the trade name of Regent Oil Company, is hereby granted a new trial in the above entitled action insofar as it relates to (a) the issue of whether said Defendant is not liable, or is liable jointly with the Defendant, Johnston's Fuel Liners, Inc., as a joint tort feasor for damages sustained by Plaintiff, if any, and the amount of Plaintiff's damages, if any, if such joint liability is found and determined; and (b) all matters at issue between the Defendant Johnston's Fuel Liners, Inc. and the Third Party Defendant Leonard Prince, an individual doing business under the trade name of Regent Oil Company, with respect to the counter-claim of said Third Party Defendant against said Defendant."

We find this order lacks clarity. Also, it is partially in error. It follows that it must be modified. We, therefore, modify it to provide as follows: That the defendant, Leonard Prince, an individual doing business under the trade name of Regent Oil Company, is hereby granted a new trial on the issue of whether or not he is liable to the third-party plaintiff for his pro-rata share of the original plaintiff's judgment against the defendant in the main action as a joint tort-feasor and, if it is found that he is not liable, then it shall be determined whether Prince, the third-party defendant, is entitled to judgment against the third-party plaintiff on its counterclaim.

 The amount of the plaintiff's damages in the main action has been established. The plaintiff has no issue for trial in the new trial. The only issue in the new trial will be the question of whether

or not the third-party defendant's negligence, if any, was a proximate cause of the fire which resulted in the plaintiff's damages and, if it is found that the third-party defendant is not liable over as a joint tortfeasor, it must then be determined whether or not the third-party defendant, Prince, is entitled to recover from the third-party plaintiff, Johnston's, on the issues as framed in Prince's counterclaim and Johnston's reply thereto and the amount of damages, if any. Thus, the new trial is limited to the issues framed in the third-party proceedings, except the second cause of action has been eliminated therefrom.

The order granting new trial is ordered modified in conformity with this opinion and, as modified, it is affirmed.

MORRIS, C. J., and BURKE and ERICKSTAD, JJ., concur.

STRUTZ, J., did not participate.

On Petition for Rehearing.

TEIGEN, Judge.

 The appellant has petitioned for a rehearing upon several grounds. All of them have been fully discussed and disposed of in the original opinion with one exception. The appellant points out that we failed to pass upon its assignment of error No. 5, in which it urges that the trial court in its order granting judgment notwithstanding the verdict also denied the motion for a new trial. This point was argued, considered and decided in the first appeal of this case reported in 122 N.W.2d 140. In that case we found the trial judge had not passed upon the motion for new trial. We reversed the judgment notwithstanding the verdict and ordered judgment entered consistent with the verdict, subject however to the right of Prince to proceed promptly to press for a ruling on his motion for a new trial. For this reason

this matter was res judicata on this appeal. The petition is denied.

MORRIS, C. J., and BURKE and ERICKSTAD, JJ., concur.

STRUTZ, J., did not participate.