[File No. 7270]

THOMAS McDERMOTT, Respondent, v. PETER SWAY and Selmer Sway, and Peter Sway, Appellants.

(50 NW2d 235)

Opinion filed December 4, 1951

*Cupler, Tenneson, Serkland & Leahy,* for appellant.
*Burnett, Bergesen, Haakenstad & Conmy,* for respondent.

GRIMSON, J.  The plaintiff brings an action for damages on three causes of action.  He alleges that he is the owner of the $S\frac{1}{2}SW\frac{1}{4}$ $SW\frac{1}{4}SW\frac{1}{4}$ of Sec 30, (5 acres), Twp 140, Range 48, Cass County, North Dakota.  He alleges for his first cause of action the wrongful removal of some boundary markers by the defendants and trespass in that connection, claiming damages in the sum of $40.00.

For his second cause of action the plaintiff alleges that the "defendant, Peter Sway, without authority and carelessly, negligently and maliciously signed a right-of-way easement to Northern States Power Company giving them the purported right to construct, operate, and maintain an electric line, including towers, poles, wires, guys, stubs and other fixtures over, across and upon the. plaintiff's property as well as the defendant's property and pursuant to such purported authority the

Northern States Power Company did construct an electric line on the plaintiff's property; that plaintiff has received no portion of the money paid to Peter Sway for such right-of-way easement and that he has been damaged in that the property has greatly deteriorated in value because of such purported right-of-way easement and the construction of the said electric line to his damage in the sum of $200.00.

For his third cause of action plaintiff alleges that he at one time orally leased these five acres to the defendant; that at the time they were seeded to alfalfa; that the defendants agreed they would reseed it on turning it back to the plaintiff; that they failed to do so and as a result the greater portion of said property has grown up to weeds to the plaintiff's damage in the sum of $50.00.

The defendants, for lack of information thereon, deny the ownership in the plaintiff of the property described in the complaint and specifically deny each of the three causes of action.

The case was tried to a jury who found for the defendants on all three causes of action and for the dismissal of the action. Plaintiff then moved for a new trial on the second cause of action only upon the grounds that "The evidence is insufficient to justify the verdict of the jury and that said verdict is against the law." The trial court granted that motion on the grounds that: "It is undisputed that there was a trespass upon his premises and where there is an unauthorized entry upon the premises of another, the law infers some damage. The damages could be either nominal or substantial. That would be a question of fact for the jury; but to say that there was no damage from such unlawful entry I believe is against the theory of the law." This appeal is from the order of the court granting the new trial on the second cause of action. In that cause of action no complaint is made against the defendant, Selmer Sway, so in this opinion defendant, Peter Sway, is treated as the sole defendant.

A motion for a new trial on the ground of insufficiency of the evidence is addressed to the sound judicial discretion of the trial court. His duty is to exercise his discretion in the in-

terests of right and justice. Pengilly v. J. I. Case Threshing Machine Co. 11 ND 249, 91 NW 63. To do that, however, there must be some grounds for the exercise of discretion. If the evidence can sustain a judgment only one way there is no ground for the court to exercise discretion. If, however, there is basis in the evidence for a decision either way then there is ordinarily room for the court to exercise his discretion. Reid v. Ehr, 36 ND 552, 558, 162 NW 903.

The question before this court on appeal from an order granting a new trial is whether the trial court had the grounds to exercise his discretion, and if so, whether he abused that discretion. If there are no grounds in the evidence to give the court a chance to decide either way he has no grounds upon which to exercise his discretion to grant a new trial. Those principles are well analyzed and clearly stated by Judge Birdzell in the case of Kohlman v. Hyland, 56 ND 772, 219 NW 228. See cases there cited and also Reid v. Ehr, 36 ND 552, 162 NW 903; Martin v. Parkins, 55 ND 339, 213 NW 574; Crane-Johnson Co. v. Prairie Fibre Co., 62 ND 51, 241 NW 593; Johnson v. Patterson, 67 ND 132, 270 NW 97; Schnell v. Northern Pacific Railway Company, 71 ND 369, 1 NW2d 56; Hochstetler v. Graber, 77 ND 90, 48 NW2d 15.

The evidence shows that the defendant, Peter Sway, was the owner of the SW¼ of Sec 30, Twp 140, Range 48 with the exception of a five acre tract in the southwest corner of said Sec 30 owned by the plaintiff. There had been some futile attempts by the parties to set off said five acres by survey. Highway No. 81 lay along the west side of said Section 30. The Northern States Power Company was building a power line on the east side of said highway and for that purpose was obtaining easements from the land owners affected. On May 28, 1946, for a consideration of $25.00 the defendant, Peter Sway, signed an easement granting the Northern States Power Company the authority to construct and maintain said power line, including the towers, poles, wires, etc., along the west side of the SW¼ of Sec 30, Twp 140, Range 48, 53 feet east of the section line. This description included plaintiff's five acres. Thereafter the said Northern States Power Company did construct said

power line. In so constructing the power line it crossed the five acres of the plaintiff and two poles were erected on plaintiff's property.

The plaintiff claims that the defendant by "negligently and maliciously" including his land in said easement caused a trespass on his five acre tract in the construction of said power line and claims defendant is liable for the damages to plaintiff's property caused thereby.

On these matters the defendant, Peter Sway, testified on cross examination under the statute as follows:

"Q. Now do you recall that in May, 1946, you signed a right-of-way easement to Northern States Power Co.?

"A. I did. On my land, yes.

"Q. Well, you say on your land? As a matter of fact in that right-of-way easement deed, you described the Southwest Quarter of Section 30, Township 140, Range 48, didn't you?

"A. I described nothing. . . ."

On direct examination Peter Sway testified:

"Q. And was there anyone out from the Power Company to see you about crossing your land?

"A. Yes.

"Q. And did you prepare any paper or anything for that easement for the Power Line yourself?

"A. No, he brought out the paper and I signed it, he explained the reasons for it.

"Q. I'll hand you Plaintiff's Exhibit D, and would you look that over for a moment or two and then I want to ask you some questions about it. Do you recall reading any document like that?

"A. No, I didn't. I didn't read anything like that.

"Q. But you did sign something?

"A. Yes.

"Q. And when did you find out for the first time that you may have signed the document where the Power Company put poles on Mr. McDermott's land?

"A. It was only a short time before this.

"Q. In this lawsuit?

"A. Yes. That's the first I knew of it.

"Q. There have never been any discussions about it between you and the Power Company as to any land other than your own?

"A. No.

. . ."

Incidentally the evidence discloses that the plaintiff did not pay any attention to the alleged trespass until shortly before the trial four years later.

On cross examination Peter Sway testified:

"Q. And you want us to understand that the reason you gave then an easement over McDermott's land is because the Northern States Power man fooled you, or something like that?

"A. No, no, he didn't fool me. All he asked was to give them the right of way over my land because he said the Bell Telephone already had the right-of-way and have had it for years and he said by doing so why they'd put the telephone lines on the same poles and they'd have fewer poles and they'd be farther off the ground where the machinery wouldn't bother them. So I thought it was a benefit to me to do so, because I'd have fewer posts, telephone posts are closer together you know, and the line was hanging there, you couldn't even get a combine through part of it.

"Q. But that gave you no right to give an easement over McDermott's property?

"A. I didn't give no easement over McDermott's, no I didn't give an easement over nobody's land but my own.

"Q. But that reads the whole southwest quarter, doesn't it?

"A. I didn't read it, I just signed it.

"Q. You are not in the habit of signing instruments without reading them, are you?

"A. Well, when I figure I knew what it was all about, so I didn't read them. He explained what it was he said he wanted to put up that line there and put the telephone on the same line and I'd have fewer poles and they'd be farther apart and so I thought it would be a better deal.

."Q. And so you signed an easement on your land and Mc-Dermott's land?

"A. Not on McDermott's because I didn't. . . . I signed the easement I figured on but my own.

"Q. But you know now you actually signed it on McDermott's, didn't you?

"A. It kinda looks that way, ya."

Mr. Ira F. Mero, the employee of the Northern States Power Company who secured the easement testified for the defense as follows:

"Q. And did you work for the Northern States Power Company in obtaining easements to the power line that runs along 81, north?

."A. I did.

"Q. And does that include the easement you obtained from Mr. Peter Sway?

"A. That's the easement that we drew up.

. . .

"Q. And this document that we're talking about, this easement document was prepared in the office of the Northern States Power Company?

"A. That's right.

"Q. And you just picked it up and went out to see Mr. Sway?

"A. That's right.

"Q. And asked him to sign it?

"A. That's right.

"Q. And he did sign it?

"A. Yes, sir.

"Q. And that's all there was to that transaction?

"A. That's all there was to it. I talked to him just, oh, just a few minutes. We visited and I told him I had the easement and check with me.

"Q. And the discussion related only to his own property?

"A. That's right."

On cross examination he testified:

"Q. Well, as a matter of fact, didn't your attorneys for Northern States Power go over these titles in advance?

"A. Not . . . the attorneys never went over our easements. And if we did trespass why it was generally brought up by the owner, for instance the line from here to Hillsboro, I bought that entire line right of way and there were several places where we placed poles that the easements didn't cover and the owner of the property would come in and mention and we would square with them. There are lots of corners, etc., that are different.

. . .

"Q. You didn't know that McDermott owned that property?

"A. I didn't have any idea.

"Q. And then you assumed that Sway knew what he owned?

"A. Yes."

Plaintiff contends that the defendant was negligent in signing the easement which included plaintiff's land and that said negligence resulted in damages to plaintiff's property.

In Shearman and Redfield on Negligence, Sec 3, p 9, the principle is laid down that "actionable negligence consists of a duty the violation thereof and a consequent injury. The absence of any one of the three elements is fatal to the claim."

The defendant's negligence consisted in failing to read the instrument which he signed granting the Northern States Power Company the easement over defendant's own land and which included therein plaintiff's five acres.

The only inference that reasonable men can draw from all of the testimony is that such negligence was not a proximate cause of plaintiff's damages. The efficient cause of such damages was the action of the Northern States Power Company. It had the easement in question prepared without checking the title. Its agent was responsible for securing the defendant's signature thereto in the belief of both that it covered only defendant's own land. The defendant committed no actual trespass on plaintiff's property. The Northern States Power Company by its agents committed the trespass, for which damages are claimed, by building the power line across plaintiff's five acres. The defendant did not aid or abet therein and had no control thereof.

As a general rule one who merely sells or leases property to which he has no title is not liable for the trespass of his vendee unless he aids or abets therein. 52 Am Jur, Trespass, Sec 33, p 862. "One who merely sells property to which he has not title is not liable for trespass committed by his vendee." 63 CJ, Trespass, Sec 77, p 934. See also Anno. 127 ALR 1015. In the case of McClanahan v. Stephens, 67 Tex 354, 3 SW 312, the defendant sold to a third party a tract of land which he held by a tax title. Such third person cut some timber on that land. Later the plaintiffs, the original owners recovered the land and sued the defendant for damages because of the cutting of such timber. The defendant appealed. The Court held: "The appellant was not liable to the original owner for the value of timber which the vendee had cut while he was in possession. The proximate cause of the injury to the owner was the act of the vendee, over which appellant had no control." In Power v. Foley, Newfoundl Rep (1897–1903) 540, the court said: "A mere sale of property to which a man has no title does not of itself carry with it a cause of action against the seller, even though the purchaser subsequently trespasses on and converts the property to his own use. It must first be proved that the defendants . . . actually took possession of the property in question, or exercised actual dominion over it, or delivered it to the trespassers in some other manner than by the mere delivery of a document purporting by its alleged construction to convey a title." The principles thus laid down apply to the case at bar.

The undisputed evidence shows that there was no trespass committed by the defendant, Peter Sway, by the granting of the easement over plaintiff's five acres under the circumstances shown in the evidence.

Trespass is defined in 52 Am Jur 840 as an " 'intentional harm;' that is, where there is no intentional act, in the sense of an act voluntarily done, there is no trespass." In the Restatement of the Law on Torts, Vol 1, Sec 158, p 359, the liability for trespass is stated as follows: "One who *intentionally* and without a consensual or other privilege

(a) enters land in possession of another or any part thereof or causes a thing or third person so to do. (b) . . . is liable as a trespasser to the other irrespective of whether harm is thereby caused to any of his legally protected interests."

In the comment thereon, Section i, p 363, it is said: "If, by any act of his, the actor *intentionally* causes a third person to enter land, he is as fully liable as though he himself enters." (Italics ours.) In Feiges v. Racine Drygoods Company, 231 Wis 270, 285 NW 799, 801, 122 ALR 272, the court said: "It is also to be borne in mind that trespass falls within the class of 'intentional harms.' Where there is no intention, no voluntary act, there is no tort, no trespass." In United Electric Light Co. v. Deliso Construction Co. Inc., 315 Mass 313, 318, 52 NE2d 553, 556, it is said: "A trespass requires an affirmative, voluntary act upon the part of a wrongdoer and in that respect differs from negligence." In Edgarten v. Welch, 321 Mass 602, 74 NE2d 674, 174 ALR 462, 469, it is stated that: "The trend of modern authority is that an unintended intrusion upon the land in possession of another does not constitute a trespass." See cases cited, also Kite v. Hamblen, 192 Tenn 643, 241 SW2d 601.

Peter Sway testified that he had no intention of granting an easement over the plaintiff's land. All the evidence and the inferences therefrom show he had no intention of trespassing on plaintiff's land or of causing anyone else to do so. No voluntary act of his caused the trespass. The evidence does not warrant the holding of the trial court that there was a trespass by the defendant upon the plaintiff's land. His negligence in not reading the easement he signed was not the proximate cause of plaintiff's damage. The jury found in accordance with the law and the undisputed evidence that there was no trespass and no damages for which the defendant was liable. The evidence did not warrant the exercise of any discretion by the trial court. The court erred in granting a new trial.

The order of the trial court is reversed.

MORRIS, C.J., CHRISTIANSON, SATHRE and BURKE, JJ., concur.