**JAMESTOWN PLUMBING & HEATING COMPANY, Plaintiff and Appellant,**

v.

**CITY OF JAMESTOWN, North Dakota, a municipal corporation, and the State of North Dakota, and Walter R. Hjelle, State Highway Commissioner of North Dakota, Defendants and Respondents.**

No. 8451.

Supreme Court of North Dakota.

Dec. 24, 1968.

Rehearings Denied Feb. 10, 1969.

Floyd B. Sperry, Bismarck, and MacKenzie & Jungroth, Jamestown, for appellant.

Kenneth M. Moran, Jamestown, for respondent, City of Jamestown.

Jon R. Kerian, Asst. Atty. Gen., Bismarck, for respondent, Walter R. Hjelle, State Highway Com'r.

KNUDSON, Judge.

The North Dakota State Highway Department joined with the City of Jamestown in a project for the improvement of Tenth Street S.E. for the distance from the James River bridge eastward to Twelfth Avenue S.E., in the year 1960. The plaintiff owns Lots 5 and 6 fronting on Tenth Street S.E., and, adjacent to the rear of Lots 5 and 6, Lots 7, 8 and 9 fronting on Second Avenue S.E. The plaintiff's store building is on Lot 6, on the corner of Tenth Street S.E. and Second Avenue S.E. This property is a short distance east of the bridge. The improvement consisted of widening the traveled portion of Tenth Street S.E. to four lanes, thereby eliminating the boulevard and bringing the traveled portion of the street up to the 4.2-foot wide sidewalk in front of the plaintiff's store building. None of the plaintiff's property was taken for the improvements. The grade of Tenth Street S.E. in front of the plaintiff's property was raised $3\%_{100}$ths inch in front of Lot 6, 3 inches in front of Lot 5, and, to the west of plaintiff's property, 7.44 inches in front of Lot 4, which lot was owned by the city.

After the street improvement, water from a drainage area of approximately 52 acres flowed upon and through the streets abutting on the plaintiff's property. Prior to the street improvement, the drainage area consisted of approximately 16 acres. The plaintiff claimed that because of the greater drainage area excessive quantities of water from rains converged in the streets at the corner of his building, overflowed the curb, and flowed into the building under the front door, requiring the plaintiff to pack stuffing under the door to try to keep the water out, and to mop up the water on the floor; that water was splashed and gravel was thrown against the plate glass windows by passing traffic; that the excessive water caused the building to settle; that the building had to be reconstructed; and that there was a settling of the sidewalk. The plaintiff also claimed damage for loss of most of its retail trade because the access to the front of its building was destroyed by the loss of street parking, the entrance being on the northeast corner next to the street improvement. The plaintiff

claimed damages to his property and business in the amount of $75,000.

The jury brought in a verdict dismissing the plaintiff's complaint. The court, over the objection of the plaintiff, assessed costs against the plaintiff in the sum of $2,112.88, and judgment was entered accordingly against the plaintiff. The trial court denied the plaintiff's motion for a new trial. The plaintiff appealed from the judgment, from the order denying the motion for new trial, and from the order denying the objection to the taxation and retaxation of costs and the order taxing and retaxing the costs and disbursements in the amount of $2,112.88.

The plaintiff contends that it is entitled to recover by inverse condemnation for the damages to its property resulting from the improvement of Tenth Street, within the purview of § 14 of the North Dakota Constitution providing that private property shall not be taken or damaged for public use without just compensation.

> Private property shall not be taken or damaged for public use without just compensation having been first made to, or paid into court for the owner. * * *

North Dakota Constitution article I, § 14.

■ We have held on numerous occasions that under this constitutional provision the owner may maintain an action to recover damages for the taking of his property and for consequential damages to his property resulting from a public use.

■ We said in Donaldson v. City of Bismarck, 71 N.D. 592, 3 N.W.2d 808, 817 (1942):

> The provisions of Section 14 of the Constitution are not restricted to eminent domain proceedings. They are applicable as well where private property has been taken or damaged without the consent of the owner, and where no condemnation proceeding has been brought. It is well settled that in such case the constitutional guarantee may be invoked, and the owner

may maintain an action to recover just compensation for the property taken or the damage inflicted.

wherein we cited Gram Const. Co. v. Minneapolis, St. P. & S. St. M. R. Co., 36 N.D. 164, 161 N.W. 732; Schilling v. Carl Township, 60 N.D. 480, 235 N.W. 126; Mayer v. Studer & Manion Co., 66 N.D. 190, 262 N.W. 925; King v. Stark County, 67 N.D. 260, 271 N.W. 771; and Jacobson v. State, 68 N.D. 259, 278 N.W. 652. We also applied this rule in the following cases: Wilson v. City of Fargo, 141 N.W.2d 727 (N.D.1966); Northern Pacific Ry. Co. v. Morton County, 131 N.W.2d 557 (N.D. 1964); Kenner v. City of Minot, 98 N.W.2d 901 (N.D.1959); Little v. Burleigh County, 82 N.W.2d 603 (N.D.1957); and Kinnischtzke v. City of Glen Ullin, 79 N.D. 495, 57 N.W.2d 588 (1953).

■ We have said that under § 14 of the North Dakota Constitution the obligation of the state to pay just compensation to the owner for the taking of or for damages to his property is, in effect, a contract to compensate for the damages. When the state takes or damages private property "there is an implied promise to make the required compensation." Schilling v. Carl Township, Grant County, 60 N.D. 480, 235 N.W. 126, 131.

> Since the Constitution guarantees the right to compensation, this obligation is in effect an implied contract on the part of the state to compensate for the damage which it has caused.

Mayer v. Studer & Manion Co., 66 N.D. 190, 262 N.W. 925, 927 (1935).

> What is recovered is "compensation," which presupposes a contract, expressed or implied. It is not damages in the strict sense of the word.

Jacobson v. State, 68 N.D. 259, 278 N.W. 652, 653 (1938).

> In constructing such a public improvement, the county * * * became obligated to the landowner upon "implied

contract" under the eminent domain provisions of Section 14 of the State Constitution * * *.

Little v. Burleigh County, 82 N.W.2d 603, 607 (N.D.1957).

■ As all of the parties have tried this case on the theory that it is an action by inverse condemnation within the provisions of § 14 of the North Dakota Constitution, we will consider the several specifications of error assigned by the plaintiff in the light of that theory.

The plaintiff contends that the court erred in refusing to permit the plaintiff to cross-examine the expert witness, Harry Arneson, a witness for the city of Jamestown, with reference to prior statements made by him relative to the damages of the plaintiff, Arneson having been employed first by the plaintiff to evaluate the damages, and then employed by the defendant.

On direct examination, Mr. Arneson testified that he had been requested by the plaintiff to look at the property in December 1965, but that he did not make an appraisal as he was under the impression that the plaintiff had dropped the matter of employing him as an appraiser, as the plaintiff thought there might be a settlement. Later, he was retained by the City as an appraiser because no settlement had been reached between the plaintiff and the defendants.

On direct examination for the defendants, Mr. Arneson testified that, "Based on the change [inflation] in the land value, I would say that today [1966] this land and building is worth about $20,000.00 more than it was in 1960."

On cross-examination by the plaintiff, Mr. Arneson testified that the value of the property before the street improvement and immediately after the street improvement was approximately the same.

The plaintiff on cross-examination sought to impeach Mr. Arneson on the ground that he had made a prior incon-

sistent statement regarding the valuations placed on the property, by asking Mr. Arneson whether he had made a previous appraisal and had arrived at damages of $8800.00 to the plaintiff's property. The court sustained the defendant's objection to the questions.

The question required the witness to categorically affirm or deny the statement attributed to him.

■ Where an attempt is made to lay a foundation for the impeachment of a witness on the ground that he has made prior inconsistent statements regarding a material issue, the questioning must take the form of requiring a witness to affirm or deny making a specific statement, and if the answer is one of denial the witness may be impeached by subsequently producing evidence to the effect that he did actually make the statement which he denies.

Sather v. Bigger, 107 N.W.2d 38, Syllabus 1 (N.D.1961).

In the instant case, the witness was not permitted to affirm or deny the specific statements that counsel attributed to him by the question. He should have been required to affirm or deny making the statements attributed to him by the question. If the witness had been required to answer the question, and if the answer had been one of denial, the witness then may be impeached by subsequently produced evidence that he actually made the prior statements attributed to him.

The ruling of the court precluded the plaintiff from proceeding further to impeach the witness.

The court erred in sustaining the objection to this question regarding a material issue in this case. This leaves us no alternative but to direct that the judgment be reversed, and a new trial granted.

There are numerous other specifications of error which we need not consider; however, since we are directing that a new

trial be granted, there are several specifications of error which we should consider as they may come up on a retrial of this case.

We will, then, consider the plaintiff's contention that the court erred in refusing to permit Eugene Weekes to testify as an expert witness with reference to the plaintiff's damages or values before and after the street improvements upon the objection made by the defendants on the ground that the witness was not qualified as an expert appraiser to appraise the property and to testify with reference to the damages.

We have reviewed the record to determine whether a sufficient foundation was laid to qualify Mr. Weekes as an expert appraiser. We find that Mr. Weekes had considerable general experience in appraising properties of all kinds, rural and urban, residential and commercial, either individually or an employee of or as an associate of other professional appraisers. He had testified in both federal and state courts as an expert appraiser. He subscribed to professional periodicals and journals, had access to a substantial library on appraisals, which he used and referred to from time to time in making appraisals of property. He had made an examination of the property in question and had compiled a record of the sales of other commercial properties in Jamestown and had prepared an appraisal of this property for the purpose of testifying in this case as an expert witness.

■ From this record we conclude that a sufficient foundation was laid to qualify Mr. Weekes as an expert witness. It is our view that the experience which the witness had gained from making appraisals of property generally, by himself, and in particular the knowledge acquired and experience gained while associated with other experts in appraising commercial properties qualified him to testify as an expert witness of the value of the commercial property in this case.

■ The rule is that:

The qualifications of a proffered expert witness are primarily a matter to be determined by the trial court and his determination with respect thereto will not be reversed unless it appears that he has abused his discretion in that respect. Fisher v. Suko, 98 N.W.2d 895, 899 (N.D. 1959).

In asserting this rule this court cited, among other cases, City of Bismarck v. Casey, 77 N.D. 295, 43 N.W.2d 372 (1950).

The rule in City of Bismarck v. Casey, supra, at 375 reads as follows:

"It is well settled that whether a witness offered as an expert is qualified to give an opinion rests very largely in the discretion of the presiding judge, whose decision will not be reversed unless clearly erroneous as a matter of law."

We believe this rule is more clearly understood as stated in Fisher v. Suko, supra. Applying this rule in the instant case we find that the trial court abused its discretion in excluding the testimony of Mr. Weekes.

The plaintiff further contends that the court erred in giving the following instruction, which was excepted to by the plaintiff:

In determining any damages, you are to assume that the improvement was properly constructed and therefore you should not permit any discussion in your deliberations on whether or not the improvement was properly constructed as this is not an issue in this case.

The trial court said that the instruction was intended to preclude any consideration by the jury of negligence or of poor design in the construction of the street. We have said that § 14 of the Constitution "does not bear upon damages resulting from the negligence of public corporations or their agents; it deals with those damages that would normally flow from the exercise of the power of eminent domain." Hamilton v. City of Bismarck, 71 N.D. 321, 300 N.W.

631. And see, Kinnischtzke v. City of Glen Ullin, 79 N.D. 495, 57 N.W.2d 588; and Mayer v. Studer & Manion Co., 66 N.D. 190, 262 N.W. 925.

In Kinnischtzke v. City of Glen Ullin, supra, 57 N.W.2d at 596, this court said:

Negligence may or may not result in the creation of a nuisance, and, on the other hand, a nuisance may be created wholly without negligence. The distinction is set out in 39 Am.Jur., Nuisances, Section 4, thus:

"liability for negligence is based on a want of proper care, while, ordinarily, a person who creates or maintains a nuisance is liable for the resulting injury to others regardless of the degree of care or skill exercised to avoid such injury."

And therein we also said, at page 599:

Negligence constitutes no exception to this provision [section 14 of the North Dakota Constitution], nor is tort of any kind made an exception. If private property is taken or damaged for public use, compensation must be made in all cases, regardless of the means employed or the intent or the lack of intent on the part of public officials.

■ We conclude that where a municipality purposely with due care or negligently so constructed the street improvement that it created a nuisance which resulted in damage to the property, the municipality is liable for the damage, regardless of the means employed or the intent or the lack of intent on the part of public officials.

■ Accordingly, we believe the instruction may have been misleading and for that reason should not have been given, and we suggest that it should not be given on a retrial of this case.

The plaintiff further contends that the court erred in sustaining objections to testimony relating to damages to the property caused by vibrations, annoyance, and traffic hazards.

■ In King v. Stark County, 67 N.D. 260, 271 N.W. 771, we said that under § 14 of the Constitution of North Dakota the state is liable for consequential damages to property not taken, where the property is not taken, that may arise from a public improvement whereby the owner has sustained a special damage with respect to his property in excess of that sustained by the public generally, and results in a diminution of the value of the property. In Donaldson v. City of Bismarck, 71 N.D. 592, 3 N.W.2d 808, we said that where a city establishes, maintains and operates a dump and as a consequence the market value of the property is substantially depreciated, such property has been damaged within the purview of § 14 of the Constitution of North Dakota and recovery is limited to the depreciation in value of the property. We further said:

The evidence showing the actual condition created by the dump and the inconvenience, annoyance, and discomfort to which an occupant of the premises had been subjected, and probably will continue to be subjected, obviously had a direct bearing upon the nature and extent of the permanent injury to the property and the amount of depreciation in value resulting from such injury. * * *

The inconvenience, annoyance and discomfort to which an occupant of the premises will be subjected as a result of the pollution of the air were among the principal factors tending to depreciate the value of the property; and the injury resulting to an occupant from such inconvenience, annoyance and discomfort would naturally be considered in fixing the damages for injury to the realty. So, also, the conditions which created the permanent injury with the resultant depreciation in value of the premises necessarily would affect and depreciate the rental or usable value of the property; and the depreciation in rental or usable value would necessarily be considered in fixing the depreciation in market value.

Donaldson v. City of Bismarck, supra, at 814.

■ Accordingly, we are of the opinion that the court should have permitted the witnesses to testify on these conditions of vibrations, annoyance, and traffic hazards insofar as such conditions may have resulted in a diminution of the value of the property and we believe that the court erred in excluding the testimony concerning these conditions.

■ The plaintiff further contends that the court erred in sustaining objections to testimony regarding loss of parking on Tenth Street S.E. This court has held that cities have the power to regulate parking and traffic on its streets, and in the case of Dacotah Hotel Co. v. City of Grand Forks, 111 N.W.2d 513, 514 (N.D.1961), we said:

A city has the statutory power to lay out, establish, open, alter, repair, clean, widen, vacate, grade, pave, park, or otherwise improve and regulate the use of streets and prevent and regulate obstructions and encroachments thereon.

It is generally held that no legal damage results where traffic is diverted by authorities and incidental loss ensues.

Generally, no legal damage results where traffic is diverted by authorities and incidental loss ensues.

26 Am.Jur.2d, Eminent Domain, § 205 (1966).

In fact, the testimony discloses that the plaintiff has free and unhampered access to the street at the intersection of Tenth Street S.E. and Second Avenue S.E. whereby its customers can go off Tenth Street S.E. onto Second Avenue S.E. from either direction. Street parking is available on Second Avenue S.E. for its customers.

■ The plaintiff contends that the court erred in excluding the testimony of its president relating to the breaking of the plate glass windows by stones thrown into them by the passing traffic. There is no merit to this contention. The witness was asked for the dates on which the windows were replaced. On cross-examination by the defendant for the purpose of laying an objection, he testified that he was not sure whether all of the replaced windows were broken by rocks or stones thrown from the street. The court sustained the objection on the ground that the plaintiff could not swear as to the cause of the window breakage. There is no error here. The witness could testify only to facts of which he had knowledge. Teegarden v. Dahl, 138 N.W.2d 668 (N.D.1965). Here, his knowledge of how the windows were broken was indefinite and uncertain. The president testified that he was not sure whether all of the broken windows was caused by stones thrown from the street by passing traffic.

The plaintiff further contends that the court erred in excluding the testimony relating to the loss of business and decrease in walk-in trade on the ground that it was too uncertain and speculative and did not go to the market value of the property.

We said in Little v. Burleigh County, 82 N.W.2d 603, at Syllabus 13 (N.D.1957):

Even though a county has taken private property for a public purpose, the statute, NDRC 1943, 32–1522, does not allow damages for increased business expense, as such, although if this should depreciate the market value of plaintiff's land, such evidence would become material on that issue.

■ Therefore, we believe the court erred in excluding evidence of injury to and loss of business and profits if such injury and loss would depreciate the market value of the plaintiff's property.

Other specifications of error have been asserted which we have considered, but as

the issues they present are not likely to arise in a new trial or are now unimportant because of the granting of a new trial, we shall not discuss them in this opinion.

The judgment of December 28, 1966, as amended by the clerk pursuant to order of the district court on June 22, 1967, is reversed and new trial granted.

TEIGEN, C. J., and STRUTZ, PAULSON and ERICKSTAD, JJ., concur.

On Petitions for Rehearing

KNUDSON, Judge.

The City of Jamestown and the State of North Dakota have filed petitions for rehearing in which they assert in essence that this Court failed to apply the applicable rules of law to the specific facts in this case.

We have considered the specific allegations contained in each of the petitions, which allegations are equivalent to the contentions made in their respective briefs in resistance to the appeal, which we have found to be without merit. We accordingly adhere to our original opinion.

The petitions for rehearing are, therefore, denied.

TEIGEN, C. J., and STRUTZ, PAULSON and ERICKSTAD, JJ., concur.