2005 ND 34

**Melvin TIBERT, Cathy Tibert, Mark Tibert, and Suzi Tibert, Plaintiffs and Appellants,**

v.

**Bill SLOMINSKI & Kathy Slominski, individually, and as they have done business as the sole shareholders of Minto Grain, LLC, a North Dakota limited liability company, Defendants and Appellees.**

No. 20040198.

Supreme Court of North Dakota.

Feb. 16, 2005.

David C. Thompson, David C. Thompson, P.C., Grand Forks, N.D., for plaintiffs and appellants.

Zenas Baer, Zenas Baer & Associates, Hawley, MN, for defendants and appellees.

KAPSNER, Justice.

[¶ 1] Melvin Tibert, Cathy Tibert, Mark Tibert, and Suzi Tibert appeal a grant of summary judgment in favor of Bill and Kathy Slominski, individually and as members of Minto Grain, LLC. We affirm.

I.

[¶ 2] Melvin Tibert, Cathy Tibert, Mark Tibert, and Suzi Tibert ("Tiberts") own homes on neighboring lots in Minto, North Dakota. Minto Grain, LLC ("Minto Grain"), a North Dakota limited liability company, owns property adjacent to the Tiberts. Bill and Kathy Slominski ("Slominskis") are the only members of Minto Grain. Minto Grain owns and operates a grain elevator on its property. The Tiberts purchased their homes in 1987. The Slominskis purchased the elevator in 2000. The elevator has been in operation, under various owners and names, since 1881.

[¶ 3] A road known as Kilowatt Drive has existed along the eastern portion of Minto Grain's property since at least 1980. This dirt and gravel road borders the Tiberts' properties and has been the subject of previous litigation. The road is used by the Tiberts, Minto Grain customers, and the general public. *Nowling v. BNSF Railway*, 2002 ND 104, 646 N.W.2d 719.

[¶ 4] The Slominskis had a survey conducted in 1999 or 2000 which indicated that Minto Grain actually owned several feet of what had previously been assumed by the Tiberts to be part of their properties. Minto Grain plans to expand Kilowatt Drive to make more room for trucks entering the elevator. These parties have been involved in numerous lawsuits involving boundary disputes and Minto Grain's plans to expand the road. *See Tibert v. City of Minto,* 2004 ND 97, 679 N.W.2d 440; *Minto Grain, LLC v. Tibert,* 2004 ND 107, 681 N.W.2d 70; *Tibert v. Minto Grain, LLC,* 2004 ND 133, 682 N.W.2d 294.

[¶ 5] Bill Slominski and Minto Grain employees, using spot lights and chain saws, cut down evergreen trees in front of Mark and Suzi Tibert's home shortly after midnight on November 13, 2003. The trees were located on the property the Tiberts had believed to be theirs before the survey. There is some dispute as to the age of the trees, but they were at least 20 years old. The trees formed a barrier between Mark and Suzi Tibert's home and Kilowatt Drive and helped control the dust and noise from the road. Since the trees were on Minto Grain's property, Minto Grain's attorney advised Bill Slominski he could remove them in the process of expanding Kilowatt Drive.

[¶ 6] The Tiberts claim the loss of the trees and intended expansion of the roadway will create a nuisance because the trucks coming to and from the elevator will generate noise, dust and exhaust fumes that will interfere with the Tiberts' use of their properties. The Tiberts further claim the passing trucks will generate dust particles that will settle on the Tiberts' properties, resulting in trespass.

[¶ 7] The district court granted Minto Grain's motion for summary judgment, finding N.D.C.C. § 42–04–02 bars the Tiberts' claim for nuisance and the elements of a claim for trespass were not present. The Tiberts appealed.

## II.

[¶ 8] We recently outlined the standard of review for summary judgment in *Grinnell Mutual Reinsurance Co. v. Lynne,* 2004 ND 166, ¶ 9, 686 N.W.2d 118:

Summary judgment is a "procedural device for the prompt and expeditious disposition of a controversy without a trial if either party is entitled to judgment as a matter of law, and if no dispute exists as to either the material facts or the inferences to be drawn from undisputed facts, or if resolving disputed facts would not alter the result." If the issues in the case are such that resolution of any factual dispute will not alter the result, then summary judgment is appropriate under the law. We review appeals from summary judgment de novo.

(Internal citations omitted). The party seeking summary judgment has the burden of showing no genuine issue of material fact exists, and the party opposing the motion must present competent admissible evidence, not present in the pleadings, which raises an issue of material fact. *Black v. Abex Corp.,* 1999 ND 236, ¶ 23, 603 N.W.2d 182. "Summary judgment is appropriate against a party who fails to establish the existence of a factual dispute on an essential element of her claim and on which she will bear the burden of proof at trial." *Id.*

## III.

[¶ 9] The tort of nuisance is statutorily defined in North Dakota. Section 42–01–01, N.D.C.C., defines a nuisance as:

A nuisance consists in unlawfully doing an act or omitting to perform a duty, which act or omission:

1. Annoys, injures, or endangers the comfort, repose, health, or safety of others;

. . .

4. In any way renders other persons insecure in life or in the use of property.

"A private nuisance is one which affects a single individual or a determinate number of persons in the enjoyment of some private right not common to the public." N.D.C.C. § 42–01–02. A private nuisance must meet the definition of nuisance as outlined in N.D.C.C. § 42–01–01. *Jerry Harmon Motors, Inc. v. Farmers Union Grain Term. Ass'n*, 337 N.W.2d 427, 432 (N.D.1983).

[¶ 10] The district court did not address whether Minto Grain's activities met the elements of nuisance because it found N.D.C.C. § 42–04–02 applied and barred the Tiberts' action. Section 42–04–02, N.D.C.C., states:

> An agricultural operation is not, nor shall it become, a private or public nuisance by any changed conditions in or about the locality of such operation after it has been in operation for more than one year, if such operation was not a nuisance at the time the operation began; except that the provisions of this section shall not apply when a nuisance results from the negligent or improper operation of any such agricultural operation.

[¶ 11] The Tiberts argue Minto Grain does not meet the statutory requirements of an agricultural operation and so cannot claim immunity under N.D.C.C. § 42–04–02. Section 42–04–01, N.D.C.C., defines an agricultural operation:

> As used in this chapter, "agricultural operation" means the science and art of production of plants and animals useful to people, by a corporation or a limited liability company as allowed under chapter 10–06.1, or by a corporation or limit-

ed liability company, a partnership, or a proprietorship, and including, to a variable extent, the preparation of these products for people's use and their disposal by marketing or otherwise, and includes . . . any and all forms of farm products, and farm production.

[¶ 12] The Tiberts argue Minto Grain cannot seek protection under N.D.C.C. § 42–04–02 because it does not qualify as a limited liability company authorized to engage in farming in North Dakota under chapter 10–06.1. Minto Grain admits it does not meet the requirements of chapter 10–06.1. This Court has held that a corporation which does not qualify under former chapter 10–06 (Corporate Farming Law) cannot invoke the protection of N.D.C.C. § 42–04–02. *Knoff v. American Crystal Sugar Co.*, 380 N.W.2d 313, 316 (N.D. 1986).

[¶ 13] Section 42–04–01, N.D.C.C., has been amended since this Court decided the *Knoff* case. When *Knoff* was decided, N.D.C.C. § 42–04–01 read:

> As used in this chapter, "agricultural operation" means the science and art of production of plants and animals useful to man, by a corporation as provided in chapter 10–06, a partnership, or a proprietorship, and including, to a variable extent, the preparation of these products for man's use and their disposal by marketing or otherwise, and includes horticulture, floriculture, viticulture, forestry, dairy, livestock, poultry, bee, and any and all forms of farm products, and farm production.

*Knoff*, 380 N.W.2d at 315 (quoting N.D.C.C. § 42–04–01 (1986)). The statute has been amended three times since, and currently reads:

> As used in this chapter, "agricultural operation" means the science and art of production of plants and animals useful

to *people,* by a corporation *or a limited liability company* as *allowed under* chapter *10–06.1, or by a corporation or limited liability company,* a partnership, or a proprietorship, and including, to a variable extent, the preparation of these products for *people's* use and their disposal by marketing or otherwise, and includes horticulture, floriculture, viticulture, forestry, dairy, livestock, poultry, bee, and any and all forms of farm products, and farm production.

N.D.C.C. § 42–04–01 (changes emphasized).

[¶ 14] In *Knoff,* this Court stated, "[w]e do not believe that it was the intent of the Legislature when it created protections for 'agricultural operations' to encompass remote preparation and marketing of such products by large national corporations." *Knoff,* 380 N.W.2d at 316. A plain reading of the statute as it existed in 1986 supports the Court's statement. However, the current statute, as amended, specifies limited liability companies both before the reference to chapter 10–06.1 and after the "or." The statute is unambiguous, and can only be read to mean the nuisance shield extends to corporations and limited liability companies meeting the definition of agricultural operation in N.D.C.C. § 42–04–01, not just those that qualify under the limitations in chapter 10–06.1. The district court was correct in concluding N.D.C.C. § 42–04–02 protects Minto Grain from a nuisance claim.

## IV.

[¶ 15] Civil trespass is a common law tort in North Dakota and is not statutorily defined. This Court has defined trespass as "an 'intentional harm,'" where a person "intentionally and without a consensual or other privilege ... enters land in possession of another or any part thereof or causes a thing or third person

so to do." *McDermott v. Sway,* 78 N.D. 521, 529–30, 50 N.W.2d 235, 240 (1951). A person who commits a trespass "is liable as a trespasser to the other irrespective of whether harm is thereby caused to any of his legally protected interests." *Id.* at 530, 50 N.W.2d at 240. If there is no intent or "affirmative voluntary act" by the alleged wrongdoer, there cannot be a claim for trespass. *Id.*

[¶ 16] The Tiberts claim vehicles using Kilowatt Drive will cause dust particles and exhaust fumes to settle on the Tiberts' homes and yards. Minto Grain argues the Tiberts' claim for trespass is premature, because they have not yet suffered any harm. While actual harm is not one of the requisite elements to a claim for trespass, actual interference with another's property is. *See generally McDermott,* 78 N.D. at 530, 50 N.W.2d at 240; 75 Am.Jur.2d *Trespass* §§ 8, 14 (1991). The trial court stated "[t]he trespass alleged is largely based on the anticipated expansion of the roadway. There is no specific scientific evidence as to how much dust will accumulate on the [Tiberts'] property or showing of actual injury." Our review of the record indicates this statement is correct and the Tiberts have provided no evidence that trespass has occurred.

[¶ 17] "When no pertinent evidence on an essential element of the claim is presented to the district court in opposing a motion for summary judgment, it is presumed no such evidence exists." *Grinnell,* 2004 ND 166, ¶ 13, 686 N.W.2d 118. Because the Tiberts presented no evidence of present interference with their properties and have not shown they can meet their burden of proof on their claim for trespass, we affirm the district court's summary judgment.

V.

[¶ 18]   We affirm.

[¶ 19] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, WILLIAM A. NEUMANN, and DALE V. SANDSTROM, JJ., concur.