2006 ND 97

**Douglas R. KNUTSON, and Linda F. Knutson, Plaintiffs and Appellants**

v.

**CITY OF FARGO, North Dakota, a municipal corporation, Defendant and Appellee.**

**No. 20050355.**

Supreme Court of North Dakota.

May 11, 2006.

Rehearing Denied June 1, 2006.

David A. Garaas, Garaas Law Firm, Fargo, ND, for plaintiffs and appellants.

Patricia A. Roscoe, Assistant City Attorney, Fargo, ND, for defendant and appellee.

SANDSTROM, Justice.

[¶ 1] Douglas and Linda Knutson appeal the district court's summary judgment dismissing their inverse condemnation, intentional trespass, and negligence claims against the City of Fargo ("the City") for damages caused to their property after a city water main broke. We affirm.

I

[¶ 2] In July 2003, a water main located under the street adjacent to the Knutsons' home broke. Water flowed onto their property, damaging their house foundation, sidewalk, and fence. In August 2004, the Knutsons sued the City. They claimed the flooding of their property was an inverse condemnation because their property had been taken or damaged for public use protected by the eminent domain provision of the North Dakota Constitution. They also claimed the leakage was an intentional trespass and the City was negligent in maintaining the water main.

[¶ 3] Discovery in the case reflected the water main adjacent to the Knutsons' property was constructed in 1950. The main was made of unlined cast iron and was eight inches wide. According to the affidavit of Dennis Walaker, Director of Operations for Fargo Public Works, cast iron water mains deteriorate over time because soil corrosion will reduce the thickness of the water main's outside wall. The wall deteriorates until a break occurs. Walaker contended no maintenance or repair procedure would have prevented the break that damaged the Knutsons' property.

[¶ 4] According to Walaker's affidavit and its attachments, the City had a water main replacement policy in place at the time the main broke. Under the policy, water mains in the worst condition are replaced first. Factors evaluated included breaks per city block, recent break history, age of the water main, and the type of main. If a city block experienced more than twelve breaks, replacement was recommended. If a block experienced between five and twelve breaks, the water main was replaced if the street was reconstructed, and recent break history was evaluated to decide whether replacement was needed. If a block experienced fewer than five breaks, recent break history and the type of street maintenance needed were considered. These blocks were given low replacement priority. According to Walaker, the policy has resulted in a significant reduction of water main breaks. When discovery was conducted, the City was replacing four to six miles of water main per year.

[¶ 5] Each party moved for summary judgment. The district court held that the Knutsons could not establish inverse condemnation because the City had taken no affirmative act to take or damage their property. The court also concluded the

Knutsons could not establish trespass because the City had no intent for the main to break. It finally concluded the City had discretionary immunity, which barred the Knutsons' negligence claim.

[¶ 6] On appeal, the Knutsons argue that the damage caused by the flooding was a taking or damaging for public use, that they can establish their trespass claim, and that the City is not immune from their negligence claim. The City argues the district court correctly granted summary judgment in its favor.

[¶ 7] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The appeal was timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2, 6, and N.D.C.C. § 27–02–04 and §§ 28–27–01 through 28–27–02.

## II

[¶ 8] A grant of summary judgment is reviewed de novo, examining the evidence in a light most favorable to the opposing party. *Makeeff v. City of Bismarck*, 2005 ND 60, ¶ 12, 693 N.W.2d 639. All inferences must be viewed in favor of the non-moving party. *Hurt v. Freeland*, 1999 ND 12, ¶ 7, 589 N.W.2d 551.

## III

[¶ 9] The Knutsons argue the district court erred when it granted summary judgment on their inverse condemnation action. The eminent domain provision of article I, section 16, of the North Dakota Constitution requires that "[p]rivate property shall not be taken or damaged for public use without just compensation having been first made to … the owner…." Inverse condemnation actions are a property owner's remedy, exercised when a public entity has taken or damaged the owner's property for a public use without the public entity's having brought an eminent domain proceeding. *Eck v. City of Bismarck*, 283 N.W.2d 193, 198 (N.D. 1979). To prove inverse condemnation, the property owner must prove that a public entity took or damaged his or her property for a public use and that public use was the proximate cause of the damage. *Frank v. County of Mercer*, 186 N.W.2d 439, 445–46 (N.D.1971).

[¶ 10] The district court concluded that to maintain an inverse condemnation claim, "Fargo must have performed some affirmative act similar to exercising the power of eminent domain." The Knutsons argue an affirmative act similar to exercising eminent domain is not required, because a public entity can be liable not only if it acts purposely but also negligently. In *Hamilton v. City of Bismarck*, a claim for damages from the overflow of Bismarck's sanitary sewer through a manhole, this Court concluded that negligence could not support an inverse condemnation claim:

> [W]e distinguish between an action for damages based upon negligence and an action based upon damage to private property for public use within the purview of § 14 of the Constitution. That section of the Constitution does not bear upon damages resulting from negligence of public corporations or their agents; it deals with those damages that would normally flow from the exercise of the power of eminent domain.

71 N.D. 321, 327, 300 N.W. 631, 633–34 (1941). The district court relied on this language to conclude inverse condemnation required an affirmative act similar to eminent domain.

[¶ 11] The Knutsons rely on *Jamestown Plumbing & Heating Co. v. City of Jamestown*, 164 N.W.2d 355 (N.D.1968), and *Kinnischtzke v. City of Glen Ullin*, 79 N.D. 495, 57 N.W.2d 588 (1953), as support that negligent acts by a public entity can

support an inverse condemnation action. In *Jamestown Plumbing & Heating,* in which a street renovation resulted in excess pooling of water that caused a business's building to settle and water to be repeatedly pushed into and under the front door of the business, this Court said:

> We conclude that where a municipality purposely with due care or negligently so constructed the street improvement that it created a nuisance which resulted in damage to the property, the municipality is liable for the damage, regardless of the means employed or the intent or the lack of intent on the part of public officials.

164 N.W.2d at 361. The *Jamestown Plumbing & Heating* Court relied on *Kinnischtzke. Id.* In *Kinnischtzke,* in which the city negligently maintained a sewage system that discharged sewage into a creek, damaging the private owner's property and livestock, this Court said:

> Negligence may or may not result in the creation of a nuisance, and, on the other hand, a nuisance may be created wholly without negligence....
>
> ....
>
> We reach the conclusion that where a municipality purposely or negligently so operates a sewage disposal plant that it becomes a nuisance which results in injury to property, the municipality is liable for damages in an amount sufficient to compensate for the injury.

79 N.D. at 510, 511, 57 N.W.2d at 596–97. On rehearing, this Court said:

> Negligence constitutes no exception to [the eminent domain provision of the North Dakota Constitution], nor is tort of any kind made an exception. If private property is taken or damaged for public use, compensation must be made in all cases, regardless of the means employed or the intent or the lack of intent on the part of public officials.

There may be instances where private property is injured through the negligence of municipal officials acting in a governmental capacity which would not amount to damaging the property for public use within the meaning of Section 14 of our constitution. *See Hamilton v. City of Bismarck,* 71 N.D. 321, 300 N.W. 631. But that is not the case here. The facts set out in the complaint indicate that damage to property resulted from a governmental activity negligently conducted over a considerable period of time and in such a manner that it became a nuisance.

*Id.* at 515, 57 N.W.2d at 599.

[¶ 12] The Knutsons also rely on *Pacific Bell v. City of San Diego,* 81 Cal. App.4th 596, 96 Cal.Rptr.2d 897 (2000). *Pacific Bell,* however, supports the argument that some governmental act, whether done purposefully or negligently, is required to claim inverse condemnation. *See id.* at 909. The California Court of Appeals stated, "Damage caused by the public improvement as deliberately conceived, altered or maintained may be recovered under inverse condemnation and the presence or absence of fault by the public entity ordinarily is irrelevant." *Id.* at 903–04 (citing *Barham v. S. Cal. Edison Co.,* 74 Cal.App.4th 744, 88 Cal.Rptr.2d 424, 431–32 (1999); *Marshall v. Dep't of Water & Power,* 219 Cal.App.3d 1124, 268 Cal.Rptr. 559, 567 (1990)). While discussing *McMahan's of Santa Monica v. City of Santa Monica,* 146 Cal.App.3d 683, 194 Cal.Rptr. 582 (1983), the *Pacific Bell* court stated:

> *McMahan's* recognized inverse condemnation is the remedy only for an injury to private property caused by a *deliberate act* for the purpose of fulfilling one of the public objects of the project as a whole. It also recognized that *negligent acts* committed during the *routine day-to-day operation* of the public improve-

ment or *negligence in the routine operation* having no relation to the functioning of the project as conceived *does not create a claim in inverse condemnation*. *Pac. Bell,* 96 Cal.Rptr.2d at 909 (emphasis added).

[¶ 13] Reading these cases together, we conclude an inverse condemnation claim does not hinge on negligence or intent to harm. *See* Alan Romero, *Takings by Floodwaters,* 76 N.D. L.Rev. 785, 790–91 n. 35 (2000) ("a physical seizure or occupation of property is a taking regardless of whether the government does so intentionally, negligently, or even innocently"). Under the North Dakota Constitution, inverse condemnation requires a public entity's taking or damaging an owner's property by some deliberate act, whether done intentionally, negligently, or innocently. The district court found that the City had undertaken no deliberate act and that the Knutsons' claim was one of negligence.

[¶ 14] The Knutsons' reliance on *Jamestown Plumbing & Heating* and *Kinnischtzke* is not on point. Both *Jamestown Plumbing & Heating* and *Kinnischtzke* applied the eminent domain provision to a nuisance occurring repeatedly over a long period. *See Jamestown Plumbing & Heating,* 164 N.W.2d at 361 ("We conclude that where a municipality purposely with due care or negligently so constructed the street improvement that it created a nuisance which resulted in damage to the property, the municipality is liable for the damage, regardless of the means employed or the intent or the lack of intent on the part of public officials."); *Kinnischtzke,* 79 N.D. at 515, 57 N.W.2d at 599 (on rehearing) ("The facts set out in the complaint indicate that damage to property resulted from a governmental activity negligently conducted over a considerable period of time and in such

a manner that it became a nuisance."). This is not a nuisance case like *Jamestown Plumbing & Heating* and *Kinnischtzke.* This is a case of one flooding caused by the rupture of one water main, not damage over time. A public entity may be held liable for nuisance under N.D.C.C. ch. 42–01. *See Dempsey v. City of Souris,* 279 N.W.2d 418, 420 (N.D.1979) (private landowner sued city under N.D.C.C. § 42–01–01 for nuisance created by the city's operation of a sewage lagoon). Reliance on article I, section 16, of the North Dakota Constitution is not necessary.

[¶ 15] In *McMahan's,* the California Court of Appeals concluded the city's knowledge of water main deterioration and failure to guard against breaks were deliberate acts. 194 Cal.Rptr. at 590. The *Pacific Bell* court agreed with *McMahan's* analysis and reversed the lower court in favor of the property owner on its inverse condemnation suit. 96 Cal.Rptr.2d at 910, 913. In *Pacific Bell,* the court stated San Diego had no method of testing water mains before they broke, instead adopting a "wait until it breaks" method of replacing pipes. *Pac. Bell,* 96 Cal.Rptr.2d at 902, 908. The City's water main replacement policy seeks to replace the worst areas first. The worst areas are found by first monitoring the number of breaks in a particular area. The City presented evidence that no normal procedure can prevent water main breaks and leaks, so the City's policy helps it guard against breaks. The policy examines factors such as breaks per city block, recent break history, age of the water main, and the type of main. Therefore, the City's replacement policy is more thorough than San Diego's procedure in *Pacific Bell,* in which San Diego replaced water mains only when they broke. The City does what is in its power to guard against breaks by addressing the

locations that need replacement the most. Therefore, *Pacific Bell* and *McMahan's* are distinguishable, and the City has not committed any deliberate act to take or damage the Knutsons' property. The Knutsons' inverse condemnation claim fails as a matter of law, and summary judgment is appropriate.

## IV

[¶ 16] The Knutsons argue the district court erred in dismissing their trespass claim, because they argue they can establish each element of trespass. For trespass, the plaintiff must establish the defendant intentionally entered the land of another, or caused a thing or third person to do so, without the consent of the landowner. *Tibert v. Slominski*, 2005 ND 34, ¶ 15, 692 N.W.2d 133 (citing *McDermott v. Sway*, 78 N.D. 521, 529–30, 50 N.W.2d 235, 240 (1951)). "If there is no intent or 'affirmative voluntary act' by the alleged wrongdoer, there cannot be a claim for trespass." *Id.*

[¶ 17] The City has not engaged in an affirmative voluntary act to enter the Knutsons' land or to cause water to enter the Knutsons' land. Because the City had authority to lay the water main in 1950, installing the water mains cannot support a trespass claim. The water main was installed without a system to directly monitor deterioration, but the record reflects that no maintenance or repair procedure will prevent water mains from breaking. Therefore, no intentional act on the part of the City caused the water to enter the Knutsons' property. Because the intent element of trespass is lacking, the trespass claim fails as a matter of law, and summary judgment is appropriate.

## V

[¶ 18] The Knutsons argue the district court erred when it held our opin-

ion in *Olson v. City of Garrison*, 539 N.W.2d 663 (N.D.1995), was dispositive and concluded the Knutsons' negligence claim was barred by discretionary immunity. Section 32–12.1–03(3), N.D.C.C., provides, in part:

> A political subdivision or a political subdivision employee may not be held liable under this chapter for any of the following claims:
>
> . . . .
>
> d. The decision to perform or the refusal to exercise or perform a discretionary function or duty, whether or not such discretion is abused and whether or not the statute, charter, ordinance, order, resolution, regulation, or resolve under which the discretionary function or duty is performed is valid or invalid.

Therefore, public entities cannot be sued in negligence for discretionary functions or duties. N.D.C.C. § 32–12.1–03(3)(d).

[¶ 19] In *Olson*, in which a water main broke and flooded the basement of a business, we held the City of Garrison's operation and maintenance of its water mains was covered by discretionary immunity. 539 N.W.2d at 668. We adopted the discretionary immunity test applied by the United States Supreme Court in *Berkovitz v. United States*, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988), to decide whether a governmental act was immune under the Federal Tort Claims Act: (1) " 'whether the action is a matter of choice for the acting employee,' " and (2) " 'whether that judgment [or choice] is of the kind that the discretionary function exception was designed to shield.' " *Olson*, at 666, 667 (quoting *Berkovitz*, 486 U.S. at 536, 108 S.Ct. 1954). Garrison considered several factors when maintaining its water mains, including "the historical performance of the water main, the cost of repairing versus replacing the wa-

ter main, the ability of the City to participate in grants or federally aided projects, and the condition of overlying streets." *Id.* at 667. We concluded the weighing of the factors by city officials involved a matter of judgment, and Garrison was motivated by economic and social considerations when it decided how to maintain its water mains. *Id.* at 667, 668. Therefore, discretionary immunity barred the Olsons' claim that Garrison negligently maintained its water mains. *Id.* at 668.

[¶ 20] The Knutsons' case is almost identical to *Olson.* The City is charged with operating and maintaining its water mains. As part of the water main maintenance plan, the City has developed a policy to help decide when it should replace a water main. Regarding day-to-day maintenance, the City presented undisputed evidence that no normal procedure can prevent water main breaks and leaks. Factors the City considers when deciding what mains to replace include breaks per city block, recent break history, age of the water main, and the type of main. Economic resources are also evaluated in the decision. The City's maintenance program balances economic and social costs and benefits such as cost of replacement, street conditions, the public's disruption, and the public's cost to find the most appropriate time to replace mains. Therefore, the City exercises its judgment when deciding what mains to replace. As in *Olson,* this operation and maintenance is the kind of function that discretionary immunity is designed to shield from second-guessing. Discretionary immunity bars the Knutsons' negligence claim, so summary judgment is appropriate.

## VI

[¶ 21] The judgment of the district court is affirmed.

[¶ 22] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, and MARY MUEHLEN MARING, JJ., concur.

KAPSNER, Justice, concurring in the result.

[¶ 23] I concur in the result reached by the majority opinion. I am troubled with the Court's conclusion in ¶ 15 that a policy deciding when to make replacements of unlined cast iron pipes does not constitute a deliberate act. Such a policy was clearly made after considerable deliberation and was then acted upon. Damages caused when such a policy fails could subject a city to liability under a theory of inverse condemnation. *See, e.g., California State Auto. Ass'n v. City of Palo Alto,* 138 Cal. App.4th 474, 41 Cal.Rptr.3d 503, 509 (2006) (discussing *Pacific Bell v. City of San Diego,* 81 Cal.App.4th 596, 96 Cal.Rptr.2d 897 (2000) and concluding damage caused from sewage backup was recoverable under inverse condemnation theory despite deliberately conceived policy of sewer maintenance).

[¶ 24] Instead of concluding a maintenance policy is not a deliberate act, I would follow our past cases. As the majority opinion correctly points out, our cases require a showing that a municipality's actions, in maintaining a public utility or improvement, reach a level of nuisance before a municipality is liable for damage to property under inverse condemnation. *See* majority opinion *supra,* at ¶ 11 (citing *Jamestown Plumbing & Heating Co. v. City of Jamestown,* 164 N.W.2d 355 (N.D. 1968); *Kinnischtzke v. City of Glen Ullin,* 79 N.D. 495, 57 N.W.2d 588 (1953)). Although nuisance may be a separate cause of action, a nuisance will also support a claim of inverse condemnation.

[¶ 25] The City of Fargo's actions did not rise to the level of a nuisance. This

claim was based upon a single instance of flooding. Therefore, I concur with the result but not the legal analysis of the majority opinion.

[¶ 26]   Carol Ronning Kapsner